[Nos. B061197, B063306. Second Dist., Div. Three. Sept. 8, 1993.]

NANDINI GAMI, a Minor, etc., et al., Plaintiffs and Appellants, v. MULLIKIN MEDICAL CENTER et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV A, C, D, E, F, and G.

**COUNSEL**

Nathaniel J. Friedman for Plaintiffs and Appellants.

O'Flaherty & Belgum, Horvitz & Levy, David M. Axelrad and Lisa R. Jaskol for Defendants and Respondents.

**OPINION**

**KITCHING, J.—**

### I. INTRODUCTION

This is an appeal from the dismissal of three consolidated medical malpractice actions brought by parents, individually, and on behalf of their minor daughter, alleging damages for negligence and for wrongful life arising from the birth of a child with neural tube defects, commonly known

as spina bifida.[1] Plaintiffs and appellants Raksha and Naran Gami (the Gamis) appeal the judgment (order of dismissal) sustaining defendants' and respondents', Mullikin Medical Center, Juan Jose Arce, M.D., and Sylvia Arellanes (defendants), demurrers without leave to amend.[2] Plaintiff and appellant Nandini Gami (Nandini), by her guardian ad litem Naran Gami, appeals the judgment on the pleadings entered in favor of defendants in an action for wrongful life.

As to the parents, the trial court sustained defendants' demurrers on grounds that the Gamis' actions were barred by the one-year statute of limitations period pursuant to Code of Civil Procedure section 340.5.[3] We need not resolve the issue of whether the Gamis properly pleaded a claim for negligent infliction of emotional distress, because we conclude that their actions were barred by the one-year statute of limitations period. Accordingly, the judgment is affirmed.

As to the child, the trial court granted defendants' motion for judgment on the pleadings, without leave to amend, on the ground that, as a matter of law, Nandini was unable to state a cause of action for wrongful life under *Turpin v. Sortini* (1982) 31 Cal.3d 220 [182 Cal.Rptr. 337, 643 P.2d 954], because *Turpin* involved a preconception tort and this case involved a postconception tort. We conclude that under the facts of this case, the holding in *Turpin* is applicable to actions alleging injuries resulting from postconception torts. Because Nandini may be able to state a cause of action against defendants for wrongful life, the judgment is reversed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

According to the allegations of the consolidated operative pleadings, Raksha was under the care of Dr. Juan Jose Arce at the Mullikin Medical

---

[1]Raksha Gami is the mother, Naran Gami is the father, and Nandini Gami is the child.

On January 11, 1991, the trial court consolidated the three cases for all purposes under case number VC 001647: Raksha Gami v. Mullikin Medical Center, a Medical Group, Incorporated, a California Corporation, Juan Jose Arce, M.D., Sylvia Arellanes (Raksha action); Naran Gami v. Mullikin Medical Center, a Medical Group, Incorporated, a California Corporation, Juan Jose Arce, M.D., Sylvia Arellanes (Naran action); and, Nandini Gami, by Naran Gami, her Guardian Ad Litem v. Mullikin Medical Center, a Medical Group, Incorporated, a California Corporation, Juan Jose Arce, M.D., Sylvia Arellanes (Nandini action).

[2]The operative pleadings in this appeal are the Gamis' second amended complaints, in which they alleged causes of action for negligent infliction of emotional distress/negligence and statutory violation pursuant to Code of Civil Procedure section 376. On May 22, 1991, the court sustained defendants' demurrers without leave to amend as to the negligence cause of action, but granted the Gamis 30 days' leave to amend the statutory violation cause of action. On or about May 24, 1991, the Gamis abandoned their Code of Civil Procedure section 376 cause of action. Their appeal alleges error only as to the court's dismissal of the negligent infliction of emotional distress/negligence causes of action.

[3]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Center during her pregnancy. On or about October 11, 1988, during her first trimester, she submitted a blood sample for alpha fetoprotein (AFP) testing.[4] The blood proved unsuitable for testing. However, neither the hospital, nor the doctor, nor his secretary, Sylvia Arellanes, advised Raksha to provide a second sample. Defendants' negligent failure to communicate this information to Raksha deprived her of an opportunity to learn whether the fetus was afflicted with neural tube defect. If further testing would have revealed that the fetus had the neural tube defect, Raksha would have terminated the pregnancy. On February 28, 1989, Nandini was born with congenital hydrocephalus (water on the brain) and spina bifida.

On October 31, 1990, Nandini filed an action for medical negligence, and the Gamis filed actions for, inter alia, negligent infliction of emotional distress/negligence. On or about December 11, 1990, defendants filed an answer to Nandini's complaint. On December 14, 1990, defendants demurred to the Gamis' complaints on grounds, inter alia, that the actions were barred by the statute of limitations. On January 18, 1991, the demurrers were sustained with 30 days' leave to amend.

On January 25, 1991, the Gamis filed first amended complaints. The only difference between the original complaints and the first amended complaints was the addition of a paragraph alleging delayed discovery.[5] On February 14, 1991, defendants again demurred on grounds, inter alia, that the actions were barred by the statute of limitations, and that there was a failure to sufficiently plead the factual basis and circumstances necessary to raise the issue of belated discovery. On March 6, 1991, the court again sustained the demurrers with 30 days' leave to amend.

On April 8, 1991, the Gamis filed second amended complaints. The only difference between the first and second amended complaints was the deletion of the belated discovery allegation. On April 30, 1991, defendants again

[4] "Section 6527 of chapter 17 of the California Code of Regulations, enacted in April 1986 pursuant to section 289.7 of the Health and Safety Code, requires clinicians to advise all pregnant women in their care of the availability of the AFP test for 'pre-natal screening of neural tube defects of the fetus.' This information must be given at the woman's first prenatal visit, provided she is within the first 20 weeks of gestation. The AFP test, which involves taking the woman's blood sample, is performed on a voluntary basis between the 16th and 20th week of gestation." (*Simmons* v. *West Covina Medical Clinic* (1989) 212 Cal.App.3d 696, 700 [260 Cal.Rptr. 772].)

[5] The additional allegation stated: "(9) Not until approximately 90-days prior to the filing of the within action did this plaintiff discover or with reasonable diligence, could he or should he have discovered, that in October, 1988, Defendant Arellanes while in the course and scope of her employment by Defendant Mullikin Medical Center, etc., was negligent in failing to contact this plaintiff and inform this plaintiff of the urgent need for Raksha Gami to give an additional sample of her blood for alpha feto protein analysis."

demurred on limitations grounds. At a hearing on May 22, 1991, the court refused to accept the Gamis' tender of a third amended complaint, and again sustained the demurrers to the negligence cause of action without leave to amend. On May 29, 1991, the Gamis moved for reconsideration of the court's May 22, 1991, order, without addressing the statute of limitations issue.[6] They attached a copy of the third amended complaint to the motion. On June 14, 1992, the motion was denied. An order dismissing the Gamis' actions was filed on July 29, 1991, and entered on July 30, 1991. On August 23, 1991, the Gamis filed a notice of appeal.

After preliminary procedural matters, Nandini's trial was set for September 30, 1991, but trailed. On or about October 3, 1991, defendants served and filed a motion for judgment on the pleadings. For the purpose of the motion only, defendants assumed they were negligent in failing to communicate to Raksha the need for a second blood sample. However, defendants argued that Nandini was unable to state a claim entitling her to relief under *Turpin* v. *Sortini, supra,* 31 Cal.3d 220, because (1) the remedy in *Turpin* applied only to actions involving preconception issues; (2) *Turpin* was not binding precedent because it was factually distinguishable from this case; and (3) the *Turpin* decision was analytically unsound and should not be expanded.

Defendants contended that the holding in *Turpin* was inapplicable in the context of a postconception injury because of *Roe* v. *Wade* (1973) 410 U.S. 113 [35 L.Ed.2d 147, 93 S.Ct. 705]. They argued that in this case, Nandini claimed that defendants negligently failed to inform her already pregnant mother, Raksha, of the need for a second blood sample. As a result of this negligence, Raksha did not have the opportunity to learn that Nandini could have been afflicted with a neural tube defect and was, therefore, deprived of the opportunity to have an abortion. Therefore, defendants argued, any injury resulting from defendants' alleged negligence was suffered by Raksha, who was allegedly deprived of her constitutional right to choose an abortion. (See *Roe* v. *Wade, supra.*) It was the mother, not the child, who suffered this injury. Only the mother had standing to seek damages based on the deprivation of her right to an abortion. Since Nandini lacked standing to recover for an injury to her mother, she could not assert any cause of action based on that injury.

On October 8, 1991, defendants' motion was granted without leave to amend. Judgment was entered on October 28, 1991. On November 1, 1991, Nandini filed a notice of appeal.

---

[6]The Gamis only argued they pleaded a valid cause of action for negligent infliction of emotional distress, and that, in the third amended complaint (not accepted by the court) sufficient facts were alleged to establish belated discovery.

### III. CONTENTIONS*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### IV. DISCUSSION

A. *The Gamis' Actions Are Barred by the One-year Statute of Limitations Under Section 340.5\**

. . . . . . . . . . . . . . . . . . . . . . . . . .

B. *A Child Claiming Injuries Resulting From Postconception Negligence Is Able to State a Cause of Action for Wrongful Life, but Only Recover Special Damages.*

▇▇ ▬▬ The sole issue in Nandini's appeal is whether a genetically impaired child can maintain a tort action against medical care providers for negligence that occurred after her conception.[10] Defendants' argument that *Turpin* is inapplicable in our case because of *Roe* v. *Wade*, is attenuated and unsupportable.

We conclude, for reasons explained below, that *Turpin* is applicable to wrongful life claims for injuries resulting from post-conception negligence.

#### 1. *Standard of Review*

▇ " 'The motion for judgment on the pleadings performs the function of a general demurrer. Therefore, it " 'admits all material and issuable facts pleaded.' " [Citation.]' [Citation.] . . . . The standard of appellate review of a judgment on the pleadings is, therefore, identical to that on a judgment following the sustaining of a demurrer. [Citation.]" (*Barker* v. *Hull* (1987) 191 Cal.App.3d 221, 224 [236 Cal.Rptr. 285].)

▇ "In the case of either a demurrer or a motion for judgment on the pleadings, leave to amend should be granted if there is any reasonable possibility that the plaintiff can state a good cause of action. (See *Okun* v. *Superior Court* (1981) 29 Cal.3d 442, 460 [175 Cal.Rptr. 157, 629 P.2d 1369], disapproved on another point in *Milkovich* v. *Lorain Journal Co.*

---

*See footnote, *ante*, page 870.

[10]On appeal, Nandini asserts a separate "negligence per se" cause of action for the physician's statutory AFP testing responsibilities, based on the same facts she alleged to support her wrongful life claim. However, the two claims are one and the same. "Wrongful life" is essentially a medical negligence claim brought by an impaired infant. (*Turpin* v. *Sortini*, *supra*, 31 Cal.3d at p. 229.)

(1990) 497 U.S. 1, 19-21 [111 L.Ed.2d 1, 18-19, 110 S.Ct. 2695].) Where a demurrer is sustained or a motion for judgment on the pleadings is granted as to the original complaint, denial of leave to amend constitutes an abuse of discretion if the pleading does not show on its face that it is incapable of amendment. (See *California Federal Bank* v. *Matreyek* (1992) 8 Cal.App.4th 125, 130-131 [10 Cal.Rptr.2d 58].)" (*Virginia G.* v. *ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1852 [19 Cal.Rptr.2d 671].)

### 2. *Wrongful Life*

 ██ "Wrongful life" is a "cause[ ] of action *brought by the infant* alleging that, due to the negligence of the defendant, birth occurred; . . ." (*Curlender* v. *Bio-Science Laboratories* (1980) 106 Cal.App.3d 811, 817 [165 Cal.Rptr. 477].)[11] The gravamen of the action is that a child afflicted with a genetic defect "alleges that but for the defendant's negligence he or she would not have been born and thus would not have had to suffer the defect." (*Turpin* v. *Sortini: Recognizing the Unsupportable Cause of Action for Wrongful Life* (1983) 71 Cal.L.Rev. 1278, 1283, hereinafter Note, *Turpin* v. *Sortini.*) "Wrongful life" is basically one form of a medical or professional malpractice action. (*Turpin* v. *Sortini, supra,* 31 Cal.3d at p. 229.) And as in any medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].)

### a. *Judicial Recognition*

 While California has recognized an impaired child's right to recover damages for "wrongful life," other courts have been reluctant to do so.

Most jurisdictions have refused to recognize a "wrongful life" claim on grounds that (1) by being born the infant does not suffer a "legally cognizable injury," and (2) damages are impossible to ascertain. (*Turpin* v. *Sortini, supra,* 31 Cal.3d at p. 226.)[12] The court in *Becker* v. *Schwartz, supra,* best described the judicial concerns when it stated: "Whether it is better never to

---

[11]The corresponding action by parents seeking damages for the birth of a child is called "wrongful birth." (*Turpin* v. *Sortini, supra,* 31 Cal.3d at p. 225, fn. 4.)

[12]*Cowe* v. *Forum Group, Inc.* (Ind. 1991) 575 N.E.2d 630; *Azzolino* v. *Dingfelder* (1985) 315 N.C. 103 [337 S.E.2d 528] certiorari denied (1986) 479 U.S. 835 [93 L.Ed.2d 75, 107 S.Ct. 131]; *Siemieniec* v. *Lutheran Gen. Hosp.* (1987) 117 Ill.2d 230 [111 Ill.Dec. 302, 512 N.E.2d 691]; *Becker* v. *Schwartz* (1978) 46 N.Y.2d 401 [413 N.Y.S.2d 895, 386 N.E.2d 807];

have been born at all than to have been born with even gross deficiencies is a mystery more properly to be left to the philosophers and the theologians. Surely the law can assert no competence to resolve the issue, particularly in view of the very nearly uniform high value which the law and mankind has placed on human life, rather than its absence. . . . [¶] . . . Simply put, a cause of action brought on behalf of an infant seeking recovery for wrongful life demands a calculation of damages dependent upon a comparison between the Hobson's choice of life in an impaired state and nonexistence. This comparison the law is not equipped to make." (386 N.E.2d at p. 812.)

In New Jersey, Washington and California, however, the high courts recognized a child's cause of action for special damages that arose from the parent's right to choose whether to conceive or bear a child, "notwithstanding [the courts'] apparent agreement that the child has suffered no cognizable injury." (*Lininger* v. *Eisenbaum, supra,* 764 P.2d at p. 1211.)[13] In these decisions, the courts determined "that the traditional requirement that a plaintiff demonstrate injury to recover in tort is less important in wrongful life cases than ensuring that an impaired child recover the extraordinary medical expenses to which his impairment will give rise, to the extent that the child's parents are unable to recover." (*Id.* at p. 1212.)

### b. *Development of California Case Law*

There is authority in California, in certain factual situations, for actions by children (and their parents) claiming injuries resulting from birth.

*Custodio* v. *Bauer* (1967) 251 Cal.App.2d 303 [59 Cal.Rptr. 463, 27 A.L.R.3d 884], the earliest case to use the term "wrongful life", "involved an action brought solely by the parents against a physician whose negligence in performing a sterilization failed to *prevent* the plaintiff's pregnancy and the birth of a healthy child, the family's tenth." (*Hegyes* v. *Unjian Enterprises, Inc.* (1991) 234 Cal.App.3d 1103, 1114 [286 Cal.Rptr. 85].) The court applied applicable tort principles, upheld the parents' right to bring the action and ruled that tort principles of compensation for " ' "all the detriment proximately" ' " caused should prevail. (*Ibid.*) However, "[t]he decision left unresolved the issue of whether the healthy, albeit unplanned, child could successfully maintain a preconception negligence claim in her own right." (*Ibid.*)

In *Stills* v. *Gratton* (1976) 55 Cal.App.3d 698 [127 Cal.Rptr. 652], ". . . both an unmarried mother and her healthy son brought consolidated actions

---

*Smith* v. *Cote* (1986) 128 N.H. 231 [513 A.2d 341]; *Lininger* v. *Eisenbaum* (Colo. 1988) 764 P.2d 1202.

[13]*Procanik By Procanik* v. *Cillo* (1984) 97 N.J. 339 [478 A.2d 755]; *Harbeson* v. *Parke-Davis, Inc.* (1983) 98 Wn.2d 460 [656 P.2d 483]; *Turpin* v. *Sortini, supra,* 31 Cal.3d 220.

against several doctors who had negligently performed a therapeutic abortion, leading to the unexpected and unwanted birth of the child." (*Turpin* v. *Sortini, supra*, 31 Cal.3d at p. 226.) The court permitted the mother's action under established tort principles. (*Ibid.*) "Notably, however, the court observed that the *normal* child born as a result of the failed abortion caused by defendant physician's negligence, had no independent cause of action for malpractice, as he sustained no cognizable damage in simply being born." (*Hegyes* v. *Unjian Enterprises, Inc., supra*, 234 Cal.App.3d at p. 1115.)

In *Curlender* v. *Bio-Science Laboratories, supra*, 106 Cal.App.3d 811, the court dealt for the first time with a genetically impaired child suing for preconception negligence and awarded her general damages for injuries.[14] The parents sued a doctor and a medical laboratory for providing them inaccurate information regarding their status as carriers of Tay-Sachs disease. (106 Cal.App.3d at pp. 815-816.) Their daughter was born afflicted with the disease, which caused physical deformities, pain, and retardation. (*Id.* at p. 816.) The court distinguished the *Stills* case as one involving an unwanted but healthy baby that had not suffered an injury (*id.* at p. 825), and concluded that the severely impaired child in the *Curlender* case suffered an injury that could be the basis of a tort action. (*Id.* at p. 830.)

The *Curlender* court disagreed with out-of-state authorities that determined a child born with genetic defects, as opposed to not being born, did not suffer any "legally cognizable injury," and stated: "The real crux of the problem is whether the breach of duty was the proximate cause of *an injury cognizable at law*. The injury, of course, is not the particular defect with which the plaintiff is afflicted—considered in the abstract—but it is the birth of plaintiff with such defect." (106 Cal.App.3d at pp. 828-829.) The court continued by stating: "The circumstance that the birth and injury have come hand in hand has caused other courts to deal with the problem by barring recovery. The reality of the 'wrongful-life' concept is that such a plaintiff both *exists* and *suffers*, due to the negligence or others. It is neither necessary nor just to retreat into meditation on the mysteries of life. We need not be concerned with the fact that had defendants not been negligent, the plaintiff might not have come into existence at all." (*Id.* at p. 829.) With the determination that the child's injury was her birth with the genetic defect,

[14]While *Curlender* has been cited as a preconception negligence case (see *Hegyes* v. *Unjian Enterprises, Inc., supra*, 234 Cal.App.3d at p. 1115), "[t]he opinion does not reveal when the plaintiff was born relative to the time the tests for Tay-Sachs were administered. The fact is relevant to the issue of whether plaintiffs relied on the misinformation before or after conceiving their child. However, it is unimportant which type of reliance was present because the parents were denied the opportunity to make an informed choice." (*Wrongful Life: A Legislative Solution to Negligent Genetic Counseling* (1983) 18 U.S.F. L.Rev. 77, 83, fn. 28, hereinafter, Note, *Wrongful Life.*)

the court then found such injury measurable. (*Id.* at pp. 829, 831.) It held that "we construe the 'wrongful-life' cause of action by the defective child as the right of such child to recover damages for the pain and suffering to be endured during the limited life span available to such a child and any special pecuniary loss resulting from the impaired condition." (*Id.* at p. 831.)

However, the *Curlender* court failed to resolve the basic issue in wrongful life actions when it ignored the comparison of an impaired life to nonexistence. (*Id.* at p. 829; Note, *Wrongful Life, supra,* at p. 85.) Instead, the court's analysis and decision "emphasized the child's plight rather than the difference between the plight and the alternative of nonexistence." (*The Trend Toward Judicial Recognition of Wrongful Life: A Dissenting View* (1983) 31 UCLA L.Rev. 473, 481, hereinafter, Note, *Trend Toward Judicial Recognition.*) This omission was criticized by the California Supreme Court in the next wrongful life case, *Turpin* v. *Sortini, supra.*

### c. *Turpin v. Sortini*

In *Turpin* v. *Sortini, supra,* 31 Cal.3d 220, our Supreme Court first dealt with the question of potential tort liability in the context of an action for wrongful life. (*Id.* at pp. 223-224.) In this case, Joy Turpin was born deaf. (*Id.* at p. 224.) She alleged that but for the negligence of the physicians' failure to diagnose her older sister Hope's hereditary deafness, she would not have been conceived. (*Ibid.*) The court upheld the wrongful life cause of action, but departed from the *Curlender* court over the issue of damages.

In its analysis, the court noted the ". . . fallacy of the *Curlender* analysis is that it ignores the essential nature of the defendants' alleged wrong and obscures a critical difference between wrongful life actions and the ordinary prenatal injury cases . . . . In an ordinary prenatal injury case, if the defendant had not been negligent, the child would have been born healthy; . . . In this case, by contrast, the obvious tragic fact is that plaintiff never had a chance 'to be born as a whole, functional human being without total deafness'; if defendants had performed their jobs properly, she would not have been born with hearing intact, but . . . would not have been born at all." (*Turpin, supra,* 31 Cal.3d at p. 231.) The court determined that since nothing the doctors could have done would have given Joy an unimpaired life, "it appears inconsistent with basic tort principles to view the injury for which defendants are legally responsible solely by reference to plaintiff's present condition without taking into consideration the fact that if defendants had not been negligent she would not have been born at all." (*Id.* at p. 232.) Therefore, the court approved the reasoning of courts in other jurisdictions and denied general damages on the grounds that "(1) it is simply impossible

to determine in any rational or reasoned fashion whether the plaintiff has in fact suffered an injury in being born impaired rather than not being born, and (2) even if it were possible to overcome the first hurdle, it would be impossible to assess general damages in any fair, nonspeculative manner." (*Id.* at p. 235.)

The court, however, came to a different conclusion with regard to special damages. It held that ". . . while a plaintiff-child in a wrongful life action may not recover general damages for being born impaired as opposed to not being born at all, the child . . . may recover special damages for the extraordinary expenses necessary to treat the hereditary ailment." (31 Cal.3d at p. 239.) To reach this conclusion, the court rejected the rationale that the child had suffered no legally cognizable injury because ". . . considerations of public policy dictate a conclusion that life—even with the most severe of impairments—is, as a matter of law, always preferable to nonlife." (*Id.* at p. 232.) "The court questioned whether 'a contrary conclusion would "disavow" the sanctity and value of less-than-perfect human life,' and rejected the assertion that California's public policy establishes as a matter of law that any life is preferable to nonexistence. The majority doubted that there is a societal consensus' that life for individuals affected by severe defects is always preferable to nonexistence. The court acknowledged instead a public policy supporting 'the right of each individual to make his or her own determination as to the relative value of life and death.' " (Note, *Turpin v. Sortini, supra*, at p. 1280, fns. omitted.)

The *Turpin* court advanced an impaired child's right to compensation by permitting the recovery of special damages. The essence of the *Turpin* decision is that logic should not defeat the claim of a severely impaired child in need of assistance. (*Smith* v. *Cote, supra*, 513 A.2d at p. 354.)

Contrary to defendants' assertions, *Turpin* does not limit recovery only to a child's claim for injuries caused by preconception negligence. In fact, the court stated: "[T]he difficult question here does not stem from the fact that defendants' allegedly negligent act and plaintiff's asserted injury occurred before plaintiff's birth. . . . Thus, if Joy's deafness was caused by negligent treatment of her mother during pregnancy, or if it resulted from a tort committed upon her mother before conception [citations], it is clear that she would be entitled to recover against the negligent party." (*Turpin v. Sortini, supra*, 31 Cal.3d at pp. 230-231.) This statement of law is essential to the court's reasoning and to the result in the *Turpin* opinion. Recovery is required where the defendant's negligence is the proximate cause of the child's need for extraordinary medical care and training. (*Id.* at p. 238.) The

ultimate concern is that the child exists and is entitled to legal recourse and compensation for such negligence.

### d. *Application of Turpin: Preconception v. Postconception Negligence*

*Turpin*'s critics allege that the decision's fundamental conceptual flaw is the impossibility of establishing the existence of any harm. (Note, *Turpin* v. *Sortini, supra*, at p. 1278.) The court, it is argued, failed to appreciate the impossibility of proving harm when it awarded special damages, and justified the award on the ground that such damages were readily ascertainable, the expenses were burdensome to the plaintiff, and no corresponding benefit was conferred on the plaintiff to offset the special damages. (*Id.* at p. 1289.)

Additionally, critics argue, the decision to deny general damages because they are impossible to calculate and then permit special damages for the same tort is internally inconsistent. (Note, *Wrongful Life, supra*, at p. 98.) If it is impossible to determine whether a plaintiff has suffered an injury, how is it possible to award any kind of damages? (*Ibid.*) The criticisms, while acknowledged, are inapplicable in our case because we do not "extend" the ruling of *Turpin*, but only follow it.

Three post-*Turpin* wrongful life actions, decided by our district, involved claims of injuries resulting from postconception negligence.[15] However, in deciding those cases, the courts denied recovery by using established tort principles to determine that the actions presented lacked an essential element to prove negligence, and, therefore, were legally unsupportable. That is not our case. Our issue is simply one of timing of injury, for Nandini may be able to plead the elements required to sustain a cause of action for negligence.

Even though other jurisdictions do not recognize a cause of action for wrongful life, our Supreme Court has done so in *Turpin* v. *Sortini*. Regardless of the criticisms of *Turpin*, until our Supreme Court or Legislature reexamines this issue, we are compelled to stay within the parameters of the law as presently established. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) However, in our case, we do not view our decision as an "extension" of *Turpin*'s principles, but merely a logical application of its rule.

---

[15]*Call* v. *Kezirian* (1982) 135 Cal.App.3d 189 [185 Cal.Rptr. 103] (Div. 4); *Simmons* v. *West Covina Medical Clinic, supra*, 212 Cal.App.3d 696 (Div. 1); and *Hegyes* v. *Unjian Enterprises, Inc., supra*, 234 Cal.App.3d 1103 (Div. 7).

 Claims for "wrongful life" are essentially actions for malpractice based on negligent genetic counseling and testing. That is Nandini's claim.

"[T]wo types of genetic counseling currently exists [*sic*] to serve couples in the exercise of their right to plan their families. The first is pre-conception genetic counseling. This type of counseling provides patients with information pertaining to whether they could or should not conceive. Typically, such information relates to fertility and to the relative potential for conceiving a child with genetic or congenital defects. [Citation.] Post-conception genetic counseling usually relates to tests conducted while the child is *in utero*, to determine if the fetus suffers from genetic defects. The most well known of these tests is amniocentesis . . . . Post-conception genetic counseling is employed so that a mother may make an informed decision on whether to have a eugenic abortion of a deformed or otherwise genetically defective fetus." (*Gallagher* v. *Duke University* (M.D.N.C. 1986) 638 F.Supp. 979, 981-982.)

 In either situation, negligence by a medical provider results in the birth of an afflicted child who must exist with that impairment. Defendants' argument that a child should only be able to recover for injuries caused by preconception negligence is a distinction without a difference. And we cannot find a legal justification for that distinction.

Our concern is whether there can be a recovery under the circumstances of this case. We address ourselves only to the issues presented by this particular litigation. Defendants negligently failed to inform Nandini's already pregnant mother of the need for a second blood sample for AFP testing. As a result of this negligence, her mother did not have the opportunity to learn that Nandini could have been afflicted with a neural tube defect. Nandini was born with spina bifida. Is Nandini entitled to legal protection from negligence? Yes. Is there any legal significance that Nandini's injuries resulted from postconception rather than preconception negligence? No.

We conclude that under the facts of this case, Nandini may be able to state a cause of action for recovery of special damages under *Turpin*. However, the complaint is not adequate in its present form. Nandini should be given the opportunity to provide requisite factual determinations, if any, in a further pleading.

C.-G.*

. . . . . . . . . . . . . . . . . . . . . . . .

## V. DISPOSITION

The judgment (order of dismissal) is affirmed.

The judgment on the pleadings is reversed and remanded for further proceedings in accord with this decision.

Each party to bear its own costs on appeal.

Croskey, Acting P. J., and Hinz, J., concurred.

A petition for a rehearing was denied September 15, 1993, and respondents' petition for review by the Supreme Court was denied December 16, 1993. Panelli, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 870.