**Michael SAUNDERS, a minor, By and Through his guardian, Mary Ann SAUNDERS, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 93–56599.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 1995.

Decided Aug. 23, 1995.

483

Janice M. Corsino, Pasadena, CA (argued), and George E. Moore, Pasadena, CA (on the briefs), for plaintiff-appellant.

Robert D. Kamenshine, U.S. Dept. of Justice, Washington, DC, for defendant-appellee.

Before McKAY,* REINHARDT, and FERNANDEZ, Circuit Judges.

Opinion by Judge McKAY; Dissent by Judge FERNANDEZ.

McKAY, Circuit Judge:

Michael Saunders, the plaintiff, is the third child born to Mrs. Saunders. Mrs. Saunders prematurely gave birth to her first child on September 15, 1983. He died a few days later from a brain hemorrhage. On October 1, 1984, Mrs. Saunders gave birth to her second child, Brian, by caesarian section at Columbus Air Force Base Hospital in Mississippi. Brian, who was also slightly premature, survived in good health. An Air Force

---

* The Honorable Monroe G. McKay, Senior Circuit Judge, United States Court of Appeals for the Tenth Circuit, sitting by designation.

physician performed the caesarian. In doing so, he noticed an anomaly in Mrs. Saunders' uterus known as a "septate uterus."

A septate uterus is a uterus that is divided by a tissue wall called a septum. This type of anomaly reduces the space in which the fetus can grow and may predispose the mother to give birth prematurely. Although the septum had always been present, the Air Force physician was the first one to discover it because Mrs. Saunders' first child was delivered vaginally.

In December 1984, Mrs. Saunders met with the Air Force physician for a post-delivery consultation. Mrs. Saunders inquired about her chances for having additional children. The physician told her that a septate uterus does not always give the baby as much room as a normal uterus, but nevertheless gave her reassurances about further pregnancies.

Thus reassured, Mrs. Saunders and her husband proceeded with their plans for additional children. On December 8, 1986, Mrs. Saunders gave birth prematurely to her third child, Michael, by caesarian section. Due to his premature birth, Michael suffered a brain hemorrhage on his second day of life, rendering him permanently and severely disabled and with a considerably shortened life expectancy.

Mrs. Saunders filed suit on behalf of her son Michael under the Federal Tort Claims Act (FTCA) because the doctor was an employee of the United States acting within the scope of his employment. She alleged that his failure to advise her properly of the risks associated with a septate uterus was the proximate cause of Michael's permanent birth injuries. Plaintiff sought damages for both past and future pain and suffering and medical expenses. Additionally, she sought damages for Michael's loss of earning capacity based upon his life expectancy if he had been born free of injury.

Under the FTCA, the district court is required to determine whether the United States is subject to tort liability by applying the law of the state where the alleged negligent acts occurred. 28 U.S.C. § 1346(b). The parties stipulated that all acts of medical negligence occurred in Mississippi, and that, therefore, Mississippi law governs the nature and extent of liability and controls the measure of damages.

The district court concluded that the physician was negligent in reassuring Mrs. Saunders regarding future pregnancy. The proper standard of medical care would have been to advise Mrs. Saunders of the availability of a surgical procedure to correct the septate uterus or to advise against additional pregnancies. The court concluded that but for the physician's negligence Mrs. Saunders would have elected to undergo the surgery or would have foregone having additional children. Thus, the doctor's negligence was the proximate cause of Michael's injuries and damages.

Having found the defendant liable, the district court then proceeded to the question of damages. The court awarded $250,000 for past and future pain and suffering and another $28,664 for future medical expenses not covered by the family's military health plan. The district court then considered whether to provide damages for future earning capacity based on a normal life expectancy, as the plaintiff had requested. Because (as the parties agree) Mississippi law is silent with respect to the measure of damages in cases where, but for the doctor's negligence, the plaintiff may not have been born at all, the district court looked to other sources of law.

After consulting these additional sources, particularly the state law of California, the district court specifically held that the plaintiff was not entitled to future lost earnings and fringe benefits based on the projected lifetime employment of a healthy, but otherwise similarly situated, child. This finding relied on the logic of two leading wrongful life cases, *Curlender v. Bio–Science Lab.*, 106 Cal.App.3d 811, 165 Cal.Rptr. 477 (Cal.Ct. App.1980); and *Turpin v. Sortini*, 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954 (Cal. 1982). Plaintiff then filed this appeal challenging this legal conclusion.

■ We review the district court's interpretations of state law *de novo*. *Jackson Water Works, Inc. v. Public Utils. Comm'n*, 793 F.2d 1090, 1092 (9th Cir.1986), *cert. de-*

*nied,* 479 U.S. 1102, 107 S.Ct. 1334, 94 L.Ed.2d 184 (1987).

Although it was entirely proper for the district court to look to external sources of law such as California law, we believe the district court's reliance on these two particular California wrongful life cases was misplaced. In both *Curlender* and *Turpin,* a child was born with a *genetic* defect. The negligence of the doctors in those cases lay in their failure to identify and/or inform the parents of the hereditary condition and the likelihood that it would be passed on to any offspring; in the absence of such negligence, the parents would definitely have opted not to have children at all. While recognizing liability, the California courts held that the wrongfully born child was not entitled to collect damages for future lost earnings as if it were a healthy child with a normal life expectancy. The reasoning behind this was simple—the doctors should not be forced to pay for something that, even had they not been negligent, was never a possibility. Future earnings as a measure of damages are typically based on the assumption of a healthy child. There was, however, never a possibility that the children in *Curlender* and *Turpin* would have been born healthy. These children would have been unjustly enriched by receiving lifetime earnings based on a wage-earning capacity that they could not actually have possessed.

We consider this case to be analytically distinct from *Curlender, Turpin,* and other wrongful life cases. Although all three cases involve a failure to properly diagnose and/or inform a woman of the likelihood of having an injured or defective child, the critical difference in this case is that no incurable genetic defect was involved. In the California cases, although the doctors could have prevented the pregnancy, they could not have prevented the defect. In this case, had the doctor not been negligent, he could have prevented the injury. For this reason, we find this case to be more closely aligned with ordinary pre-natal injury cases, where the doctor's negligence more directly causes the injury.[1]

■ There can be little dispute but that lost earnings are a proper measure of damages in pre-natal injury cases.[2] This additional measure of damages is predicated on an element not present in wrongful birth cases: namely, were it not for the defendant's negligence, a healthy child *might* have been born instead of an injured one.[3] Under the government's proposal (which was seemingly endorsed by the district court), this test would be reversed: if there were a possibility that, had the defendant not been negligent, no baby (either healthy or injured) would have been born at all, then the cause of action is treated as akin to wrongful life. We do not believe the Mississippi courts would sanction such a test, and we therefore decline to adopt it.

■ Although it is entirely possible that Mrs. Saunders might have chosen not to have any more children if she had been properly advised by her physician, that possibility alone does not convert a pre-natal injury case into a wrongful life case where such a choice definitely would have been made. We cannot know with any degree of certainty what she would have done had she been

---

1. Although the negligence in a wrongful life case is typically pre-conception and in a prenatal injury case it is typically post-conception, this is not the distinguishing factor between the two types of cases. Indeed, in recent cases this distinction has been abandoned. *See Gami v. Mullikin Medical Ctr.,* 22 Cal.Rptr.2d 819, 827–28 (Cal.Ct.App. 1993) (even though child's injuries were caused by post-conception negligence, child could maintain wrongful life action where negligence of doctor in failing to test for and inform of serious defect in fetus deprived mother of opportunity to consider abortion).

2. *See 1st of America Bank v. United States,* 752 F.Supp. 764, 780 (E.D.Mich.1990); *Ensor v. Wilson,* 519 So.2d 1244, 1273 (Ala.1987), *reh'g denied,* 537 So.2d 66 (Ala.1988); *Reffitt v. Hajjar,* 892 S.W.2d 599, 602–03 (Ky.Ct.App.1994); *Kavanaugh v. Nussbaum,* 129 A.D.2d 559, 514 N.Y.S.2d 55, 59 (N.Y.App.Div.1987), *aff'd as modified,* 71 N.Y.2d 535, 528 N.Y.S.2d 8, 523 N.E.2d 284 (1988).

3. We intentionally use the term "might" rather than "would." The absence of medical malpractice is, unfortunately, not a guarantee of a healthy baby. We take judicial notice that there is always the possibility of complications in a pregnancy and delivery unrelated to the negligence of medical professionals.

faced with a choice between the two undesirable alternatives of undergoing major surgery or forbearing additional children. Indeed, Mrs. Saunders herself equivocated on this point during her testimony, as, we think, any honest person would have done. The trial court may have believed that this uncertainty precluded the award of damages for lost earnings because they were unduly speculative. However, under Mississippi law, it is not necessary to prove damages with absolute certainty; only a "reasonable probability" is required. *See Mississippi Model Jury Instructions,* Instruction 20.01 (2d ed. 1992); *Brake v. Speed,* 605 So.2d 28, 32 (Miss.1992). Mrs. Saunders testified that she "probably" would have had the surgery, and the district court found her to be "totally credible." Furthermore, the fact that she inquired about having additional children and then conceived and brought a child to term is itself very strong evidence of her desire to have additional children. Thus, we think it is fair to conclude, for the limited purpose of assessing damages, that there is at least a reasonable probability that she would have opted for the surgery.

■ In failure-to-inform cases such as this one, it is ordinarily not helpful to speculate about what the parents might have done had they been properly informed of their options. The fact is that a baby injured by a doctor's negligence was born and a healthy baby was not born. The child must be compensated for the difference. Thus, we believe the better rule, and the rule most likely to be adopted by the Mississippi courts, is that where the negligence of a medical professional causes an injured baby to be born, and where there is a reasonable probability that a healthy baby might have been born had there been no negligence, it is irrelevant whether the negligent care occurred pre-conception or post-conception. Accordingly, the same damages that are available in more typical pre-natal injury cases, including lifetime earnings, must be awarded.

The judgment of the district court is REVERSED, and this case is REMANDED for the calculation and award of additional damages for loss of earnings and benefits.

FERNANDEZ, Circuit Judge, dissenting:

No one questions the district court's determination that the negligence of the doctor resulted in injury to Michael, at least in the sense that Michael would not have been born but for that negligence. In that respect, Michael did carry the burden of persuasion. But the burden of persuasion on damages also rested with Michael.

If loss of earnings damages were desired, the damages could not be based upon a "wrongful life" theory. *See Turpin v. Sortini,* 31 Cal.3d 220, 229–30, 182 Cal.Rptr. 337, 643 P.2d 954 (1982); *cf. Sweeney v. Preston,* 642 So.2d 332 (Miss.1994). It appears that no one disputes that either.

However, the evidence did not require a determination of whether Mrs. Saunders would have had an operation and then had more children, or whether she would have simply decided not to have more children. Were it the latter, Michael's complaint must be that he, who would not have been born at all, was born very susceptible to the harm that quickly befell him. The district court was left in equipoise on that issue, and equipoise means that Michael cannot prevail.

I so state because I cannot agree that this case (and others like it) are prenatal injury cases as a matter of law. It all depends. Perhaps it would in most cases be difficult to refute an assertion by a mother that she would or would not have had an operation. Perhaps. But here the evidence would have permitted the district court to decide that Mrs. Saunders would have chosen not to have the operation or a child. Her counsel argued that she would not have become pregnant again if there were only a ten percent chance of having a premature child.[1] There was evidence to show that if the doctor had mentioned the operation and given a proper explanation of it, that would not have removed the risk of a premature birth. The one other limited statistic presented showed

---

1. She said that if there were a five percent chance that the child would be born as early as her other very premature child she would not have become pregnant again. As it turns out, Michael was almost that premature.

about an eight percent chance of premature birth (one in thirteen) would remain. Beyond that, the operation came with its own risks.

Counsel urged the court to decide the case without resolving the question of whether, had Mrs. Saunders been fully informed, she would have had an operation and another child. The court decided that she either would have had the operation or would not have had Michael. Again, it left the issue in equipoise. Thus, I cannot agree that as a matter of law this is simply a prenatal case. It is a hybrid and could go either or neither way depending on the evidence. When it went neither way, the person who bore the burden of persuasion properly lost on that issue.

In saying the above, I must admit that the district court's decision is somewhat enigmatic. If the court thought that the wrongful life measure of damages outlined by the California courts was proper, one wonders why general damages were awarded. *Cf. Turpin,* 31 Cal.3d at 236–37, 182 Cal.Rptr. 337, 643 P.2d 954. It might be argued that the district court did not find the question of operation versus no child to be in equipoise but just did not decide the question at all because it saw this (as does the majority) as a typical prenatal case in either event. If that were so, selection of the wrongful life cases for the purpose of measuring some of the damages is a bit mystifying. Maybe those problems militate for a remand to the district court for further findings, even though counsel encouraged the court to make the findings it did. However, they do not militate for a determination that, as a matter of law, Michael is entitled to the prenatal injury measure of damages.

Thus, I respectfully dissent.