Filed 7/2/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FREDDY RODRIGUEZ, | B241049 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC446932) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEALS from judgments of the Superior Court of Los Angeles County. Kenneth R. Freeman, Judge.  Affirmed in part and reversed in part.

Robert Mann and Donald W. Cook for Plaintiff and Appellant.

Joseph A. Langton, Deputy County Counsel; Manning & Kass, Ellrod, Ramirez, Trester, LLP and Steven J. Renick for Defendant and Respondent County of Los Angeles.

Lynberg & Watkins, S. Frank Harrell and Alexandru D. Mihai for Defendant and Respondent County of Orange.

_____

Appellant Freddy Rodriguez sued respondents the County of Los Angeles and the County of Orange (collectively county defendants) as vicariously liable under Government Code section 815.2 for false imprisonment by sheriff's deputies, after he was held in custody for 11 days pursuant to a bench warrant issued for another person. Relying on *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820 (*Venegas*), the trial court found that appellant's claims were barred because a sheriff acts as a state agent as a matter of law in determining whether to hold someone in custody. Because *Venegas* dealt with federal claims under the Civil Rights Act (42 U.S.C.A. § 1983) (section 1983), and we are confronted with a state law claim, we follow *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710 (*Sullivan*), which held that a county can be held vicariously liable for false imprisonment by county employees.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Second Amended Complaint

The operative second amended complaint (SAC) alleges the following: On October 23, 2009, around 7:30 p.m., appellant was stopped by police for driving while talking on a cell phone. He handed over his driver's license, which showed his name as Freddy Pantoja Rodriguez, his registration, and his proof of insurance. After the two officers held a discussion, appellant was told to step out of his car, and one of the officers said, "We got you now RAMOS." Appellant replied that his name was Rodriguez, not Ramos. One of the officers slammed him against a wall and asked if he had any weapons or tattoos, to which he replied "no." The officer then looked under appellant's shirt, and placed him in the patrol car.

It turns out that more than 20 years earlier, a no-bail bench warrant was issued by the Orange County Superior Court for the arrest of another man for a parole violation. The bench warrant stated the name as "RODRIGUEZ Alfredo Ramos."[1]

Appellant was taken to the Los Angeles Police Department. He told the booking officer his true name, and asked that his fingerprints and photograph be taken. His

---

[1]     Appellant conceded below that the warrant appeared to be facially valid.

2

requests were initially ignored, and he was told there was an outstanding warrant for him issued by the superior court in Inglewood for his nonappearance on a citation for a dog leash violation.

Appellant was finally fingerprinted, photographed, and placed in a cell at the Los Angeles Police Department. Because October 23, 2009 was a Friday, appellant remained in custody at the department until Monday, October 26, 2009. On that day, he was taken to court in Inglewood, where he pled guilty to the dog leash infraction and was sentenced to time served.

Appellant was not released, but taken to the Los Angeles County jail, where he was called by the name of Ramos. He was subjected to physical abuse by jail personnel, including having apples thrown at him, and forced to paint cells and hallways during the night, despite having informed jail personnel that he had diabetes and high blood pressure.

On October 30, 2009, appellant was transported to the Orange County jail, where he repeated that he was not the person named in the bench warrant. He was placed in a gang cell and feared for his life. On November 2, 2009, appellant appeared in court in Orange County, where it was adjudicated that he was not the person named in the bench warrant, the case was dismissed, and he was released. Appellant spent a total of 11 days in custody.

The SAC names as defendants the City of Los Angeles, three individual Los Angeles Police Department officers, the County of Los Angeles and the County of Orange.[2] The SAC asserts causes of action for false imprisonment against the county defendants on the theory that they are vicariously liable for the acts of their employees under Government Code section 815.2, subdivision (a), because the county jail personnel "refused" appellant's attempts to identify himself, and failed to conduct any investigation into the matter, such as comparing appellant's signature and documents with those of

---

[2] Only the county defendants are parties to this appeal.

3

Ramos.[3]  The SAC also asserts claims for assault and battery, negligence, and civil rights violations.

**Responses and Rulings**

The County of Los Angeles filed a demurrer to the SAC, which was sustained without leave to amend.  The County of Orange filed a motion for judgment on the pleadings on the false imprisonment claim,[4] which was granted without leave to amend. The trial court found that, under *Venegas*, the California sheriffs were acting as state officers as a matter of law in determining to hold inmates.  The trial court therefore concluded that the county defendants were immune from liability for false imprisonment by their sheriffs under Government Code section 815.2, subdivision (b).[5]  However, neither of the county defendants' sheriffs were sued.  Had they been sued under section 1983, they would have received federal immunity.  Because the county defendants were sued vicariously under a state law false imprisonment claim for the actions of their deputy sheriffs, neither section 1983 nor *Venegas* is applicable.

These appeals followed.

---

[3]     Appellant did not sue, nor does the SAC identify, any particular county sheriff or deputy sheriff.  Although not discussed by the parties, we note that the Legislative Committee Comments to Government Code section 815.2 state:  "Under this section, it will not be necessary in every case to identify the particular employee upon whose act the liability of the public entity is to be predicated.  All that will be necessary will be to show that some employee of the public entity tortiously inflicted the injury in the scope of his employment under circumstances where he would be personally liable."  (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 42 (1963 Reg. Sess.) Sen. J., pp. 1887-1888.)

[4]     It appears that the remaining claims against the County of Orange were previously dismissed by way of demurrer and motion for summary adjudication.

[5]     The demurrer by the County of Los Angeles challenged each of the causes of action alleged against it.  Because appellant raises no arguments on appeal as to any cause of action other than false imprisonment, he has forfeited the right to do so, and we affirm that part of the judgment sustaining the demurrer without leave to amend as to the remaining causes of action.

**DISCUSSION**

**I.  Standard of Review**

We review de novo a trial court's sustaining of a demurrer without leave to amend, exercising our independent judgment as to whether a cause of action has been stated as a matter of law.  (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)  We assume the truth of properly pleaded allegations in the complaint and give the complaint a reasonable interpretation, reading it as a whole and with all its parts in their context.  (S*top Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 558; *People ex rel. Lungren v. Superior Court, supra,* at p. 300.)

""""The motion for judgment on the pleadings performs the function of a general demurrer.  Therefore, it "'admits all material and issuable facts pleaded.'" [Citation.]" [Citation.]  . . . The standard of appellate review of a judgment on the pleadings is, therefore, identical to that on a judgment following the sustaining of a demurrer. [Citation.]' [Citation.]" (*Gami v. Mullikin Medical Center* (1993) 18 Cal.App.4th 870, 876 (*Gami*); *Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1347–1348.) Where a demurrer is sustained or a motion for judgment on the pleadings is granted, denial of leave to amend constitutes an abuse of discretion if the pleading does not show on its face that it is incapable of amendment.  (*Gami*, *supra,* at p. 877.)

**II.  Vicarious Liability for County Defendants**

Appellant contends the trial court erred in finding the county defendants immune from vicarious liability for false imprisonment pursuant to Government Code section 815.2.  This section provides in full:  "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.  [¶]  (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an

5

act or omission of an employee of the public entity where the employee is immune from liability."[6] (Gov. Code, § 815.2.)

Appellant relies on *Sullivan*, *supra*, 12 Cal.3d 710, in which nearly 40 years ago, our Supreme Court addressed the following question: "[W]hether an individual who is confined in a county jail beyond his proper jail term may maintain an action for false imprisonment against the county or whether such a suit is barred by the governmental immunity provisions of the California Tort Claims Act." (*Id*. at p. 713.) The plaintiff's claim for false imprisonment arose after he remained confined in the Los Angeles County jail for several days after the termination of his sentence. (*Ibid.*) Our Supreme Court found that "[n]o immunity provision in the California Tort Claims Act insulates the county from liability for false imprisonment" (*id*. at p. 715), and concluded that "if the county sheriff is liable as a public employee . . . for his alleged failure to release plaintiff from jail after all charges against him were dismissed, then the county will be derivatively liable for those acts under [Government Code] section 815.2." (*Id*. at p. 717, fn. omitted.)

Here, the trial court did not focus on *Sullivan,* but instead relied on the Supreme Court case of *Venegas* to conclude that the county defendants are immune from liability for false imprisonment. In *Venegas*, a husband and wife filed claims against the County of Los Angeles, its sheriff's department, sheriff and deputies, and others, under section 1983 for unreasonable detention, search and seizure.[7] They also filed a similar claim

---

[6]     A public employee does not have immunity for false imprisonment. (Gov. Code, § 820.4 ["A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment"].)

[7]     Section 1983 provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . ."

6

under Civil Code section 52.1.[8] (*Venegas, supra*, 32 Cal.4th at p. 828.) The issue before the Supreme Court was: "Does a sheriff act on behalf of the state or county when conducting a criminal investigation, including detaining suspects and searching their home and vehicle?" (*Id*. at p. 826.) After reviewing California constitutional, statutory and case law, as well as federal case law, the *Venegas* court held that "sheriffs act on behalf of the *state* when performing law enforcement activities," and therefore, like the state, are absolutely immune from prosecution for asserted violations of section 1983. (*Venegas, supra*, at p. 826.) The court did, however, allow the state law claim under Civil Code section 52.1 to proceed against the county, its sheriff's department and its sheriff. (*Venegas,* at pp. 841–843.)

We agree with appellant that *Sullivan,* and not *Venegas*, is controlling here. In *Venegas,* the court was addressing the liability of a county under section 1983. Under this federal claim, local entities and officers sued in their official capacity cannot be held vicariously liable for their subordinate officers' unlawful acts; they can only be held directly liable for constitutional violations carried out under their own regulations, policies, customs, or usages by persons having "'final policymaking authority'" over the actions at issue. (*Venegas, supra*, 32 Cal.4th at p. 829.) By contrast, here, appellant brought a state law claim for false imprisonment, and not a section 1983 claim. This state law claim can be based on vicarious liability, while a section 1983 claim cannot.

Moreover, unlike *Venegas*, appellant never sued the sheriffs of the county defendants. Nor did appellant allege a section 1983 cause of action. Thus, there was no need for the trial court to make any determination as to whether the sheriffs were acting on behalf of the state or county.

---

[8] Civil Code section 52.1 subdivision (a) allows a lawsuit to be brought "If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state. . ."

The *Venegas* court unanimously held that a county can be liable under state law, i.e., Civil Code section 52.1, for actions by its sheriff and sheriff's department. But this analysis does not require any determination of whether a sheriff is a state or county agent, and the court did not engage in such an analysis. Indeed, we note that in the recent case of *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, our colleagues in Division Four upheld a judgment for false imprisonment against the County of Los Angeles, based on the county sheriff's department having wrongly imprisoned the plaintiff in the mistaken belief that he was subject to a parole hold. (*Id*. at p. 962.) In *Allison v. County of Ventura* (1977) 68 Cal.App.3d 689, 696, Division Four noted that a plaintiff could pursue a false imprisonment action against a county based on the actions of its employees. Likewise, in addressing a claim of false imprisonment against a county, the court in *Scannell v. County of Riverside* (1984) 152 Cal.App.3d 596 stated: "It follows that under the concept of respondeat superior, a public employer is responsible for the tort of false imprisonment by the conduct of a public employee acting within the course and scope of his employment." (*Id*. at p. 605.) Had our Supreme Court in *Venegas* intended to reverse nearly 40 years of precedent, we believe it would have done so explicitly. Thus, *Venegas* is not inconsistent with *Sullivan*.

8

**DISPOSITION**

The judgment in favor of the County of Orange is reversed.  The judgment in favor of the County of Los Angeles is reversed as to that portion sustaining without leave to amend the demurrer to the fifth cause of action for false imprisonment against the County of Los Angeles; in all other respects the judgment in favor of the County of Los Angeles is affirmed.  Rodriguez is entitled to recover his costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>**.


_____, J.
          ASHMANN-GERST


We concur:


_____, P. J.
      BOREN


_____, J.
      CHAVEZ