Filed 12/1/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| VENTURA COASTAL, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, <br><br> Defendant and Respondent; <br><br> DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, <br><br> Real Party in Interest and Respondent. | F077267 <br><br> (Super. Ct. No. VCU272109) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County. Melinda Myrle Reed, Judge.

Lebeau-Thelen, Daniel K. Klingenberger, Kelly A. Lazerson and Patrick Charles Carrick for Plaintiff and Appellant.

J. Jeffrey Mojcher, Aaron R. Jackson, Autumn Gonzalez and Andia Farzaneh for Defendant and Respondent.

Christopher P. Grossgart, Rocio Garcia-Reyes and Willie N. Nguyen for Real Party in Interest and Respondent.

-ooOoo-

The Department of Industrial Relations, Division of Occupational Safety and Health (Division) issued a citation to an employer for a safety violation on its premises that resulted in injury to an employee. The employer contested the citation. It was upheld by the hearing officer and, on reconsideration, by the Occupational Safety and Health Appeals Board (Board). The employer filed a second petition for reconsideration by the Board, then filed a petition for writ of mandate in the trial court. On the Board's motion for judgment on the pleadings, the trial court dismissed the writ petition, finding it was not timely filed. We conclude filing a second petition for reconsideration was not permitted when the employer was not newly aggrieved by the decision after the first reconsideration, and the petition for writ of mandate was not timely filed after the Board's decision after the first reconsideration.

In light of the recent decision in *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710 (*Saint Francis*), however, we conclude the time limitation for filing the writ petition is subject to equitable tolling, and the employer should have been allowed to amend its petition to allege facts supporting application of that doctrine. Accordingly, we reverse the judgment and remand with directions to the trial court to permit the employer to amend its petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2014, Isaul Alvarado, an employee of Ventura Coastal, LLC (Ventura), sustained a serious leg injury when he stepped into an uncovered screw conveyor (also known as an auger) located below ground level on Ventura's premises. On September 19, 2014, the Division conducted an inspection of Ventura's facility; it subsequently issued a citation to Ventura under the California Occupational Safety and Health Act (CalOSHA; Lab. Code, §§ 6300–6721) for a serious violation of a regulation requiring screw conveyors at or below floor level to be guarded by railings or substantial covers or gratings (Cal. Code Regs., tit. 8, § 3999, subd. (a)). Ventura appealed the

2.

citation to the Board, arguing that it did not violate the safety order or, if there was a violation, it was misclassified as serious.

The matter was heard before an administrative law judge (ALJ). After taking evidence, the ALJ issued a decision with the following findings: a section of the screw conveyor was uncovered at the time of the incident; an employee had removed the grate that covered the screw conveyor on at least two occasions in the two-month period prior to the incident; a supervisor, Manuel Sierra, was standing on a platform with a direct line of sight to the exposed screw conveyor at the time of the incident; and, with adequate supervision and a thorough inspection of the area, Ventura could have known of the existence of the exposed screw conveyor. The ALJ upheld the citation, finding Ventura committed the violation alleged, and it was properly classified as a serious violation. The ALJ did, however, reduce the proposed penalty.

The Board, on its own motion, ordered reconsideration of the ALJ's decision regarding the penalty. Ventura also filed a petition for reconsideration by the Board, asserting as grounds for reconsideration that the evidence did not justify the findings of fact, and the findings of fact did not support the decision. On September 22, 2017, the Board issued its decision after reconsideration, upholding the decision of the ALJ. The Board concluded the Division established Ventura violated the regulation; Ventura failed to establish its defense that it did not know, and should not reasonably have known, that the screw conveyer was uncovered at the time of the incident; the violation was properly classified as serious; and the ALJ properly modified the penalty.

On October 20, 2017, Ventura filed a second petition for reconsideration with the Board. It asserted three of the Board's factual findings were not supported by the evidence, so the decision exceeded the Board's authority. Alternatively, at a minimum, the violation should be reclassified from serious to general. On October 26, 2017, the chief counsel for the Board sent a letter to Ventura's counsel, confirming a prior

3.

telephone conversation and explaining that the Board lacked "statutory authority and/or jurisdiction to reconsider a matter after it has issued a decision after reconsideration."

On December 15, 2017, Ventura filed a petition for a writ of mandate in the superior court, seeking review of the Board's September 22, 2017 decision. The petition named the Board as respondent and the Division as real party in interest. The Board filed a motion to dismiss or for judgment on the pleadings, asserting the writ petition was statutorily required to be filed within 30 days after the Board's decision was issued, the time limit was jurisdictional, the writ petition was not filed within that time period, and therefore the trial court had no power to hear the matter and was required to dismiss the petition. Ventura opposed the motion, arguing its second petition for reconsideration was proper on various grounds, including the ground that Ventura was newly aggrieved by the Board's factual findings and reliance on hearsay evidence. The trial court granted the Board's motion and entered a judgment of dismissal. Ventura appeals from that judgment.

## DISCUSSION

### I.      Standard of Review

The Board's first pleading in the trial court was captioned as a motion to dismiss or for judgment on the pleadings. It asserted Ventura's writ petition should be dismissed or judgment should be entered in the Board's favor because the petition was not timely filed. Like a demurrer to a complaint, the motion was based on the allegations of the petition. Generally, " '[t]he bar of the statute of limitations to an action … should be set up by demurrer, or in an answer, and not by motion to dismiss.' " (*Berendsen v. McIver* (1954) 126 Cal.App.2d 347, 351.) A demurrer may be filed in response to a petition for writ of administrative mandate. (Code Civ. Proc., § 1089; *Boren v. State Personnel Board* (1951) 37 Cal.2d 634, 637–638; *Hansen v. Board of Registered Nursing* (2012) 208 Cal.App.4th 664, 668–670, 675; *Gong v. City of Fremont* (1967) 250 Cal.App.2d 568, 571–572.)

4.

" 'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action.  [Citation.]  A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' " (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)  Thus, whether we treat the Board's pleading as a motion for judgment on the pleadings or as a miscaptioned demurrer, the standard of review is the same:  we independently determine whether, on the state of the pleadings and any matters that may be judicially noticed, it appears the Board was entitled to judgment as a matter of law.  (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1216.)  In doing so, " '[a]ll properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law.' " (*People ex rel. Harris*, at p. 777.)

To the extent our review requires interpretation of statutory language, we are also presented with a legal issue subject to de novo review.  (*Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1076–1077.)  We are not bound by the interpretation applied by an administrative agency or by the trial court.  (*Id*. at p. 1077.)  "Instead, we make an independent review of any questions of law necessary to the resolution of this matter on appeal." (*Ibid*.)

## II.     Timeliness of Filing of Writ Petition

### A.     Administrative process

If the Division believes an employer has violated a safety regulation, it must issue a citation to the employer.  (Lab. Code,[1] § 6317.)  The employer then has 15 working days from receipt of the citation to notify the Board that it wishes to contest the citation.  (§ 6319, subds. (a), (b).)  If the employer gives timely notice that it intends to contest the citation, the Board "shall afford an opportunity for a hearing." (§ 6602.)  The initial hearing may be conducted by an ALJ.  (§§ 6604, 6605; Cal. Code Regs., tit. 8, § 375.1.)

---

[1]     All further statutory references are to the Labor Code unless otherwise indicated.

5.

At the hearing, the parties may call and examine witnesses, introduce exhibits, and make motions. (Cal. Code Regs., tit. 8, § 376.1.) The hearing is conducted informally and need not adhere to the technical rules of admissibility of evidence. (§ 6603; Cal. Code Regs., tit. 8, § 376.2.) "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (Cal. Code Regs., tit. 8, § 376.2.)

After the hearing, the ALJ or Board issues a decision, making findings of fact, summarizing the evidence received and relied upon, and affirming, modifying, or vacating the Division's citation, or directing other appropriate relief. (§§ 6602, 6608.) The Board may confirm, adopt, modify, or set aside the findings or decision of the ALJ, and may enter its own decision based on the record in the case. (§ 6609.)

Within 30 days after service of the final decision of the Board or ALJ, an aggrieved party may petition the Board for reconsideration of any matter determined or covered by the final decision, or the Board may grant reconsideration on its own motion. (§ 6614.) The Board may affirm, rescind, alter, or amend the decision, with or without further proceedings, or may grant reconsideration and direct the taking of additional evidence. (§§ 6620, 6621.) The decision of the Board must be in writing, state the evidence relied on, and specify the reasons for the decision. (§ 6623.) "A petition for reconsideration is deemed to have been denied by the appeals board unless it is acted upon within 45 days from the date of filing." (§ 6624.)

B. **Review by writ petition**

A motion for reconsideration is a prerequisite to a court challenge to the decision of the Board. (§ 6615.) A party may challenge the Board's decision in court by filing a petition for a writ of mandate in the appropriate superior court. (§ 6627.) "The application for writ of mandate must be made within 30 days after a petition for reconsideration is denied, or, if a petition is granted or reconsideration is had on the

6.

appeals board's own motion, within 30 days after the filing of the order or decision following reconsideration." (*Ibid.*)

## C. Proceedings in this case

The ALJ issued his decision on March 7, 2017, making eight findings of fact and concluding: (1) Ventura failed to ensure the screw conveyor was guarded by a substantial cover or grating; (2) the Division established a rebuttable presumption that the violation was serious; (3) Ventura did not rebut that presumption by demonstrating it was unaware of the violation; and (4) the Division did not demonstrate the penalty was reasonable. Ventura petitioned for reconsideration of the ALJ's decision on three statutory grounds: (1) that by the decision, the Board acted without or in excess of its powers; (2) that the evidence did not justify the findings of fact; and (3) that the findings of fact did not support the decision. (§ 6617, subds. (a), (c), (e).) Ventura contended the Division had not met its burden of proving a violation of the regulation (Cal. Code Regs., tit. 8, § 3999, subd. (a)) by a preponderance of the evidence. It also asserted the Division failed to establish Ventura adopted or implemented any unsafe or unhealthful practice because there was no evidence Ventura's management was aware anyone had previously removed the grate in issue; thus, the Division failed to establish the basis for a rebuttable presumption that a serious violation of the regulation occurred. Ventura further argued the evidence showed the violation was unforeseeable under the *Newbery* defense.[2]

On September 22, 2017, the Board issued its decision after reconsideration. It made 10 findings of fact, most of which were substantially similar to those of the ALJ. The Board concluded the Division established a violation of the regulation by a

---

[2] The *Newbery* defense, which originated in *Newbery Electric Corp. v. Occupational Safety & Health Appeals Bd.* (1981) 123 Cal.App.3d 641, 649, "states that the violation is deemed unforeseeable, therefore not punishable, if none of the following four criteria exist: (1) that the employer knew or should have known of the potential danger to employees; (2) that the employer failed to exercise supervision adequate to assure safety; (3) that the employer failed to ensure employee compliance with its safety rules; and (4) that the violation was foreseeable." (*Gaehwiler v. Occupational Safety & Health Appeals Bd.* (1983) 141 Cal.App.3d 1041, 1045.)

7.

preponderance of the evidence, Ventura failed to establish the *Newbery* defense, the violation was properly classified as serious, and the ALJ properly modified the penalty imposed.  The Board made one new factual finding that the ALJ did not make:  that Sierra, the plant supervisor, "had seen the grates removed from the auger in the past and had reported the unsafe condition to upper management."

Ventura was unsatisfied with the result of reconsideration and believed the Board's new finding was contrary to the evidence, but it did not file a petition for writ of mandate in the superior court within 30 days after the decision on reconsideration was filed (§ 6627).  Instead, on October 20, 2017, 28 days after the Board filed its decision after reconsideration, Ventura filed a second petition for reconsideration with the Board.  Ventura's second petition for reconsideration challenged three of the Board's factual findings as incorrect, that is, not supported by the evidence presented.  Although counsel for the Board promptly notified Ventura's counsel that the Board lacked the power to reconsider a decision a second time, Ventura waited until December 15, 2017, 84 days after the Board issued its decision after reconsideration, to file the petition for writ of mandate in the trial court.

**D.      Timeliness of writ petition**

**1.      Statutory time period**

Ventura has not identified any provision in the statutes relating to hearings before the Board that authorizes a party to file a second petition for reconsideration, or that authorizes the Board to reconsider the same matter it has already reconsidered.  We have found none.  (See §§ 6600–6633.)  Ventura asserts the second petition for reconsideration was "*timely* filed," and Ventura "timely invoked [sections ]6614, 6617 and 6626."

The sections cited do not authorize a second petition for reconsideration.  Section 6614 provides:

> "(a)  At any time within 30 days after the service of any final order or decision made and filed by the appeals board or a hearing officer, any party aggrieved

8.

directly or indirectly by any final order or decision, made and filed by the appeals board or a hearing officer under any provision contained in this division, may petition the appeals board for reconsideration in respect to any matters determined or covered by the final order or decision and specified in the petition for reconsideration. Such petition shall be made only within the time and in the manner specified in this chapter.

"(b) At any time within 30 days after the filing of an order or decision made by a hearing officer and the accompanying report, the appeals board may, on its own motion, grant reconsideration." (§ 6614.)

Under this section, regardless whether the decision was made by the ALJ or by the Board (§§ 6608, 6609), a party aggrieved by the final decision may petition the Board for reconsideration of matters contained in the decision. The petition must be made within the time specified, i.e., within 30 days after service of the decision being challenged. (§ 6614, subd. (a).) There is no provision for a petition for reconsideration of the decision after reconsideration.

Section 6617 merely sets out the grounds on which a petition for reconsideration may be based. Section 6626 provides: "Nothing contained in this chapter shall be construed to prevent the appeals board, on petition of an aggrieved party or on its own motion, from granting reconsideration of an original order or decision made and filed by the appeals board within the same time specified for reconsideration of an original order or decision." This section emphasizes that the Board may reconsider its own original decision, in the event the original decision in the matter was made by the Board itself, rather than by an ALJ, and the same time limits apply.

The Board's decision after reconsideration may be reviewed by writ of mandate.

"Any person affected by an order or decision of the appeals board may, within the time limit specified in this section, apply to the superior court of the county in which he [or she] resides, for a writ of mandate, for the purpose of inquiring into and determining the lawfulness of the original order or decision or of the order or decision following reconsideration. The application for writ of mandate must be made within 30 days after a petition for reconsideration is denied, or, if a petition is granted or reconsideration is had on the appeals board's own motion, within 30 days after the filing of the order or decision following reconsideration." (§ 6627.)

9.

Thus, if a party wishes to challenge the decision after reconsideration, or the ALJ's or Board's original decision if reconsideration was denied, an application for a writ of mandate must be timely filed within the time periods specified.

The Board's decision after reconsideration was filed on September 22, 2017. Ventura's petition for writ of mandate was filed in the trial court on December 15, 2017, 84 days later. It was not filed within the 30-day period provided for in section 6627. Consequently, it was untimely.

### 2. Newly aggrieved by decision after reconsideration

By analogy to worker's compensation proceedings, Ventura argues a second petition for reconsideration is permissible when the petitioning party has been newly aggrieved by the decision after the first reconsideration. It asserts it was newly aggrieved by the Board's decision after reconsideration because the Board made one new factual finding and relied on hearsay evidence the ALJ did not rely on; therefore, the second petition was justified.

The statutes governing procedures of the Workers' Compensation Appeals Board (WCAB) are generally similar to the statutes governing the Board's procedures. A person aggrieved by the final decision of the workers' compensation judge or the WCAB may petition the WCAB for reconsideration but must do so within 20 days after service of the decision. (§§ 5900, 5903.) A petition for reconsideration, or reconsideration on the WCAB's own motion, is a prerequisite to accrual of a cause of action in court. (§ 5901.) The grounds for reconsideration by the WCAB are the same as the grounds for reconsideration by the Board. (§§ 5903, 6617.) After reconsideration, the WCAB decision is reviewable by writ, but it is reviewed by the Supreme Court or the court of appeal by application for a writ of review, and the application must be made within

10.

45 days after the petition for reconsideration is denied or a decision after reconsideration is filed. (§ 5950.)[3]

Under the workers' compensation scheme, courts have held that a party generally may not file a second petition for reconsideration in the same matter. In *Crowe Glass Co. v. Industrial Acc. Com.* (1927) 84 Cal.App. 287 (*Crowe Glass*), the surviving spouse of a deceased employee sought workers' compensation benefits based on the injury that allegedly caused the employee's death. The Industrial Accident Commission (Commission [the predecessor of the WCAB]) denied the spouse's claim, and she filed a petition for rehearing.[4] (*Id*. at pp. 289–290.) The Commission granted rehearing, took further evidence, and affirmed its original decision. (*Id*. at p. 290.) The spouse filed a second petition for rehearing, challenging the decision on rehearing. (*Id*. at pp. 290–291.) The Commission granted a second rehearing and, without taking further evidence, rescinded its prior decisions and found in favor of the spouse. (*Id*. at p. 291.) The issue presented in the writ proceeding was whether the Commission acted in excess of its powers by granting a second rehearing. The employer contended the only procedure allowed by statute after a decision on rehearing was for an aggrieved party to apply to the court of appeal or supreme court for a writ of review. (*Id*. at pp. 291–292.) The spouse, however, contended "that as the statute does not expressly prohibit a second application, the Commission may entertain one," and the provision for writ review used the word " 'may,' " not " 'must.' " (*Id*. at p. 292.)

---

[3]  Section 5950 provides in its entirety: "Any person affected by an order, decision, or award of the appeals board may, within the time limit specified in this section, apply to the Supreme Court or to the court of appeal for the appellate district in which he [or she] resides, for a writ of review, for the purpose of inquiring into and determining the lawfulness of the original order, decision, or award or of the order, decision, or award following reconsideration. The application for writ of review must be made within 45 days after a petition for reconsideration is denied, or, if a petition is granted or reconsideration is had on the appeal board's own motion, within 45 days after the filing of the order, decision, or award following reconsideration."

[4]  Prior to a 1951 statutory amendment, a petition for reconsideration was called a petition for rehearing. (§ 5900, as amended by Stats. 1951, ch. 778, § 13.)

11.

The court concluded:

"It seems plain to us that the provisions in question contemplate but one rehearing and that thereafter, if a party feels aggrieved, he must apply to the appellate courts. If it could be held that an applicant is entitled to more than one rehearing it would follow that the employer and insurance carrier would likewise be so entitled, as the act would have to be given a uniform operation. If such right existed, an employer or insurance carrier, if they felt aggrieved upon a decision on rehearing, could again invoke the Commission's jurisdiction to grant a second rehearing and so on indefinitely. On the other hand, where an award had been refused an applicant and a rehearing denied, he could again apply for a rehearing which could be granted or denied and so on *ad infinitum*. Under such a practice there would be no end to the litigation, as no time, however great, would operate to bar successive applications provided only that they were applied for in seasonable time. Such a construction would lead to legal chaos." (*Crowe Glass*, *supra*, 84 Cal.App. 287 at p. 293.)

It would also defeat the purposes of the workers' compensation statutes, "which contemplate[] a speedy determination of controversies involved thereunder, and not a vacillating attitude on the part of the Commission." (*Crowe Glass*, *supra*, 84 Cal.App. 287 at p. 293.) The court cited a prior Supreme Court case in which the court observed, "[i]t is the policy of the law in general practice to consider but one application for a rehearing," and determined that the Commission's jurisdiction was exhausted by the first petition for rehearing. (*Id.* at p. 294, italics omitted.) "The act in question, properly construed, contemplates but one rehearing and the party aggrieved must then look to the appellate courts for a review of the proceeding." (*Ibid.*) Regarding the term "may" in the statute authorizing writ review, the *Crowe Glass* court stated it meant "that when a litigant elects to further proceed with his case after decision on rehearing, he *must* apply in accordance with the provisions of the act. The words are employed to express the existence of a privilege that may be exercised in the discretion of the applicant and this is the only remedy that a party to such a proceeding has after decision on rehearing, the jurisdiction of the Commission being exhausted upon the final disposition of that hearing." (*Id.* at pp. 294–295.)

The Supreme Court subsequently addressed a similar issue in *Goodrich v. Industrial Acc. Com.* (1943) 22 Cal.2d 604 (*Goodrich*). The dependents of an employee who allegedly died in a work-related accident applied for workers' compensation benefits. (*Id*. at pp. 606, 609.) After an award was made, the petition for rehearing filed by the employer's insurer was granted and compensation was denied on the ground the employee was not acting within the course and scope of his employment at the time of his death. (*Id*. at pp. 609–610.)

The dependents later petitioned to reopen the case and take new evidence (see § 5803).[5] (*Goodrich*, *supra*, 22 Cal.2d at p. 610.) The Commission denied that petition. (*Ibid*.) The dependents filed a petition for rehearing, which the court interpreted as a request for rehearing of the denial of reopening the case. (*Id*. at pp. 610, 612.) The Commission granted the petition, held a further hearing, and took additional evidence, including newly discovered evidence that could not reasonably have been produced at the original hearing. (*Id*. at p. 610.) On August 6, 1942, the Commission ordered that the case be reopened, but again denied compensation. (*Ibid*.) On August 20, 1942, the dependents filed another petition for rehearing, which was denied. (*Id*. at pp. 610–611.) They then filed a petition for writ of review on September 25, 1942. (*Id*. at p. 611.)

In the writ proceeding, the Commission contended it had no jurisdiction to rule on the August 20, 1942 petition for rehearing, its final decision was the August 6, 1942 decision, and the dependents were required to file their petition for review within 30 days thereafter, which they failed to do. (*Goodrich*, *supra*, 22 Cal.2d at p. 611.) The court observed: "Generally, if a party does not prevail on the original hearing and his petition

---

[5] Section 5803 grants the WCAB continuing jurisdiction over all its orders, decisions, and awards, to rescind, alter, or amend them with good cause. "This power includes the right to review, grant or regrant, diminish, increase, or terminate, within the limits prescribed by this division, any compensation awarded, upon the grounds that the disability of the person in whose favor the award was made has either recurred, increased, diminished, or terminated." (§ 5803.) There is no corresponding provision in CalOSHA.

13.

for a rehearing is denied, he may not again petition for a rehearing. He must seek relief in the courts. [Citations.] However, if one party prevails in the original hearing and on rehearing the other party prevails, the first party may petition for rehearing of the order made on rehearing because he has for the first time become the aggrieved party under section 5900 of the Labor Code [citations], though it may be that such petition is not a condition precedent to court review." (*Ibid.*)

The dependents could have petitioned for rehearing within 20 days after the decision on the insurer's petition for rehearing, which was adverse to them. (*Goodrich*, *supra*, 22 Cal.2d at p. 611.) The August 6, 1942 decision, made after new evidence was taken, amended the previous decision by making more explicit findings, but still denied compensation. The court concluded the Commission had the power to entertain a petition for rehearing of the August 6, 1942 decision, because the Commission considered new evidence. "[T]he decision therein is in effect a new decision on new facts, and the party although failing to prevail on the last occasion as he had on the first is entitled to a reconsideration by the commission of its opinion on the new evidence. The very purpose of a rehearing is to have a reconsideration of a matter which has been theretofore considered only on one occasion." (*Id*. at p. 612.) The court distinguished the *Crowe Glass* case, because there, the court did not consider the effect of the receipt of newly discovered evidence. (*Goodrich*, at p. 612.) The *Goodrich* court concluded the successive rehearings the *Crowe Glass* opinion contemplated would not occur. (*Goodrich*, at pp. 612–613.) "If the losing party again petitions for a rehearing, that is, a reconsideration of the evidence before the commission, in a case where no new evidence is presented, and it is denied, he cannot again petition for a rehearing, because the commission in such a case is not requested to reconsider new and different evidence." (*Id*. at p. 613.)

*Zozaya v. Workmen's Compensation Appeals Bd.* (1972) 27 Cal.App.3d 464 reached a similar result. The referee, after hearing, concluded the employee's on-the-job

injury caused a permanent disability of 33.25 percent. (*Id*. at p. 466.) The WCAB granted the employer's petition for reconsideration, set aside the referee's decision, and ordered examination by an independent medical examiner. (*Ibid*.) After the examination, the WCAB adopted the referee's findings and award as its decision after reconsideration. (*Ibid*.) The employer filed a second petition for reconsideration, which was granted, resulting in a decision that the employee's injury caused a permanent disability of 12 percent. (*Id*. at pp. 466–467.)

The court noted "that the filing of the second petition for reconsideration by the employer did not do violence to the rule that an aggrieved party is entitled to but one petition for reconsideration. [Citation.] It is also the rule that where reconsideration is granted and new evidence is considered the appeals board may properly entertain another petition for reconsideration. [Citations.] In such a case the very purpose of the second petition for reconsideration is to have a reconsideration of a matter, i.e., the new evidence, which has theretofore been considered on one occasion." (*Zozaya v. Workmen's Compensation Appeals Bd.*, *supra*, 27 Cal.App.3d at p. 470.)

*Rea v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 625 (*Rea*) presented this issue in an unusual fact situation. The injured employee's employer was illegally uninsured for workers' compensation, so the employee claimed benefits from the Uninsured Employers Fund (Fund). (*Id*. at pp. 628–629.) The workers' compensation judge heard the matter, which included issues regarding the identity of the employer. (*Id*. at p. 634.) The judge entered an award in favor of the employee. The Fund petitioned the WCAB for reconsideration, contending the correct employer had not been served, so there was no jurisdiction to make an award. (*Id*. at p. 635.) The WCAB affirmed the judge's award but found the Fund had not assisted in identifying the correct employer for eight years. (*Id*. at p. 636.) Its decision adopted procedures for the Fund to follow in future cases. (*Id*. at pp. 636–637.)

15.

The Fund petitioned for reconsideration a second time but did not challenge the sufficiency of the evidence to support the decision. Rather, it contended it was newly aggrieved by the decision on the ground it decided new issues not raised in the prior petition for reconsideration, specifically, the conduct of the Fund that allegedly justified the new procedures and the new procedures themselves. (*Rea*, *supra*, 127 Cal.App.4th at pp. 637–638.) The Fund also contended the procedures were void, because they were not enacted in accordance with the Administrative Procedure Act. (*Rea*, at p. 638.) The WCAB dismissed the second petition for reconsideration, and the Fund petitioned for a writ of review to challenge the decision containing the new procedures. (*Ibid*.)

The court concluded the Fund was newly aggrieved by the decision on the first petition for reconsideration. (*Rea*, *supra*, 127 Cal.App.4th at p. 642.) Because the basis for the new procedures was not raised by the parties, and the new procedures were decided for the first time without notice, the second petition for reconsideration was not repetitive and properly requested reconsideration on a matter that had been considered only once. (*Ibid*.) "If reconsideration is granted and a party is newly aggrieved by the resulting decision within the meaning of sections 5900 and 5903, the party may either petition for reconsideration or [petition for a] writ of review." (*Id*. at p. 643.) Because the WCAB had jurisdiction of the second petition for reconsideration, the Fund properly and timely petitioned for a writ of review. (*Id*. at p. 643.)

To summarize, in the analogous workers' compensation scheme, an aggrieved party is generally entitled to only one petition for reconsideration. However, if a party prevails initially and, on petition for reconsideration by the other party, the decision is reversed, the party who initially prevailed becomes an aggrieved party for the first time and may petition for reconsideration. Alternatively, if reconsideration is granted and new evidence is taken, a second petition for reconsideration may be filed to challenge that decision and its new evidentiary basis. Further, if the decision after the first reconsideration includes matters not raised by the parties, or not appropriate to include in

16.

such a decision, a petition for reconsideration may be used to challenge those matters because they could not have been challenged in the first petition for reconsideration. However, if the party who did not prevail initially loses again after reconsideration, and no new evidence was presented on reconsideration, that party cannot petition for reconsideration a second time.

Interpreting the similar provisions of CalOSHA in a similar fashion, we conclude none of the circumstances in which a second petition for reconsideration has been allowed is present in this case. Initially, the ALJ ruled against Ventura, upholding the citation and finding a violation of the safety regulation was established. On reconsideration, the Board reached the same result. The Board did not take further evidence but based its decision on the evidence presented at the hearing before the ALJ. Ventura's second petition for reconsideration did not assert the decision after the first reconsideration raised any issues that were beyond the scope of the issues raised by the parties; Ventura's second petition for reconsideration, like the first, was based on the claim that the evidence presented before the ALJ did not justify the Board's findings and decision.

In its second petition for reconsideration, Ventura asserted three findings by the Board were factually incorrect:

"5. Employer's plant supervisor, Manuel Sierra (Sierra), was present at the time of the incident, standing atop a platform with direct line of sight of the exposed screw conveyor. [¶] … [¶]

"7. Sierra had seen the grates removed from the auger in the past, and had reported the unsafe condition to upper management. [¶] … [¶]

"9. With adequate supervision and a thorough inspection of the area, Employer could have known of the existence of the exposed screw conveyor on August 30, 2014."

Findings Nos. 5 and 9 were almost identical to findings made by the ALJ. The ALJ found: "Employer's foreman, Manuel Sierra (Sierra), was present at the time of the

incident, standing atop a platform with direct line of sight of the exposed screw conveyor." He also found: "With adequate supervision and a thorough inspection of the area, Employer could have known of the existence of the exposed screw conveyor." Only finding No. 7 was not made by the ALJ.

In its second petition for reconsideration, Ventura contended that, based on findings Nos. 5, 7, and 9, the Board concluded Sierra reported the removal of grates to his supervisor, which gave Ventura actual knowledge of the potential danger to employees; therefore, it was not unforeseeable that the grates would be removed again. Further, the Board mentioned a hearsay statement Alvarado attributed to the plant manager, Steve Morrison, that " 'they could have avoided it.' " The Board concluded the knowledge of Sierra and Morrison was imputed to Ventura, so Ventura could not rebut the presumption of a serious violation by claiming it was unaware that the guarding was sometimes removed. Ventura also took issue with the Board's conclusion that, from his vantage point, Sierra could have noticed the missing cover and either fixed it or removed the workers from the area.

Ventura's second petition for reconsideration argued factual finding No. 7 was incorrect because Sierra testified he saw the grates lifted on only one occasion, in a completely different area, where there was no employee traffic or access. In a footnote, Ventura made a hearsay objection to Alvarado's testimony concerning the statement Morrison allegedly made to him, that " 'they could have avoided it.' " Ventura conceded hearsay evidence was permitted to be used to supplement or explain other evidence (Cal. Code Regs., tit. 8, § 376.2), but objected that the testimony was unreliable and self-serving, and Alvarado's interpretation of the comment reflected his inadmissible opinion.

Ventura now argues that its second petition for reconsideration was proper because Ventura was newly aggrieved by the Board's decision after reconsideration. It contends it was newly aggrieved by "[t]he Board's new finding and use of hearsay/opinion testimony." We disagree.

18.

The Board's decision after reconsideration reached the same result as the ALJ's decision. The ALJ's decision upheld the citation, concluded a serious violation of the safety regulation was established, concluded Ventura failed to establish a *Newbery* defense, and imposed a modified penalty. The Board's decision after reconsideration also concluded a serious violation of the safety regulation was established, concluded Ventura failed to establish a *Newbery* defense, and upheld the ALJ's modified penalty. Thus, Ventura was the nonprevailing (i.e., aggrieved) party in both decisions. It was not newly aggrieved after reconsideration; it did not prevail initially and lose for the first time after reconsideration.

Ventura's second petition for reconsideration, like its first petition, asked the Board to determine, based on the evidence presented at the hearing before the ALJ, that there was no substantial evidence that Ventura violated the safety regulation, and no substantial evidence that Ventura knew or had reason to know of the violation at the time of Alvarado's injury. The Board did not take any new evidence on reconsideration. Its decision was based solely on the same evidence presented at the hearing before the ALJ, on which the ALJ's decision was based. Consequently, Ventura was not challenging for the first time the sufficiency of any new evidence that was not presented at the hearing before the ALJ. It was challenging for the second time the sufficiency of the same evidence to support the same finding that Ventura violated the safety regulation.

Ventura also was not newly aggrieved by the Board imposing new rules or new procedures on it, as was the case in *Rea*.

Finally, the Board's decision after reconsideration did not decide any issues that were beyond the scope of the issues raised by the parties, without giving the parties an opportunity to argue their merits. The Board conducted a routine reconsideration of the ALJ's decision; it reviewed the evidence presented at the hearing, made its own factual findings, and reached conclusions on the legal issues raised by the parties. Ventura's second petition for reconsideration raised the same issue as the first: whether the

19.

evidence presented at the hearing before the ALJ constituted substantial evidence supporting the findings and conclusions made. Ventura's argument in the second petition for reconsideration was simply that the Board made one factual finding that the ALJ did not make and used evidence that the ALJ did not mention. Ventura was still aggrieved on the same ground: it believed the evidence did not support the findings and decision.

We conclude Ventura was not newly aggrieved by the Board's decision on reconsideration, and the filing of a second petition for reconsideration was not authorized by statute or case precedent.

### 3. Waiver of objections

Ventura contends its second petition for reconsideration was proper in order to avoid the risk of waiving its objections to the evidence the Board relied on in its decision on reconsideration.

"The petitioner for reconsideration shall be deemed to have finally waived all objections, irregularities, and illegalities concerning the matter upon which the reconsideration is sought other than those set forth in the petition for reconsideration." (§ 6618.)[6] The "matter upon which the reconsideration is sought" is the matter presented at the hearing before the ALJ and may encompass the hearing proceeding itself. In the petition for reconsideration, the petitioning party must make any objections to the evidence presented at the hearing that it wishes to make, or the objections are waived. The party petitioning for reconsideration must also raise in the petition any issue of irregularities or illegalities in the hearing proceedings, or those issues are waived.

To the extent Ventura sought, in its second petition for reconsideration, to object to hearsay evidence presented at the hearing, the time for those objections had already

---

**6** See also California Code of Regulations, title 8, section 391, which provides in pertinent part: "A petition for reconsideration shall set forth specifically and in full detail the grounds upon which the petitioner considers the order or decision to be unjust or unlawful, and every issue to be considered by the Appeals Board on reconsideration. Any objection or issue not raised in the petition for reconsideration is deemed waived by the petitioner."

20.

passed. If the objections were not made during the hearing before the ALJ or in the original petition for reconsideration, they were already waived before the second petition for reconsideration was filed. The applicable provision states:

> "The hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. *Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. An objection to hearsay evidence is timely if made before submission of the case or raised in a petition for reconsideration.*" (Cal. Code Regs., tit. 8, § 376.2, italics added.)

California Code of Regulations, title 8, section 376.2 and Labor Code section 6618 place on a party who seeks reconsideration the obligation to raise evidentiary objections either at the hearing or in the petition for reconsideration. On reconsideration, the Board is free to make its own findings of fact, based on all of the evidence presented at the hearing before the ALJ. (§ 6621.) Because the party petitioning for reconsideration does not know which evidence the Board will find persuasive, the party must raise all objections it wishes the Board to consider, not just objections to the evidence mentioned in the ALJ's decision.

Ventura concedes the first time it objected to Alvarado's hearsay testimony regarding Morrison's statement was in its second petition for reconsideration. It had the opportunity to object to any evidence presented at the hearing, on hearsay or any other grounds, either at the hearing or in its petition for reconsideration. Under section 6618, Ventura's hearsay objection to Alvarado's testimony was waived before the second petition for reconsideration was filed, when it was not raised in Ventura's first petition for reconsideration. Filing a second petition for reconsideration could not revive its right to object, nor could the perceived need to raise objections that had not yet been made

21.

validate the filing of a second petition for reconsideration instead of a petition for writ of mandate.

### 4. Due process violation

Ventura contends that, because the Board made a new factual finding to support its decision that Ventura committed a safety violation, it "proceeded on a new and different theory for finding a serious violation without affording Ventura the opportunity to rebut the new finding and object to the hearsay/opinion testimony used in support of its error on reconsideration." Citing *Rucker v. Workers' Comp. Appeals Bd.* (2000) 82 Cal.App.4th 151 (*Rucker*), Ventura asserts this constituted a due process violation that justified filing a second petition for reconsideration.

In *Rucker*, an injured employee challenged her employer's failure to pay certain types of compensation and sought penalties for that failure. (*Rucker*, *supra*, 84 Cal.App.4th at pp. 153–154.) Most of the issues were resolved before the trial. (*Id*. at p. 154.) After the trial, the workers' compensation judge issued an order denying penalties, finding that the employer did not act unreasonably because it acted in reliance on a prior WCAB decision in an unrelated case. (*Id*. at p. 155.) The employee filed a petition for reconsideration, contending the denial of penalties was not supported by the evidence; she also asserted the order omitted a provision requiring the employer to pay unpaid advances against permanent disability, although the employer admitted at trial that it had not paid any during the period in dispute. The employer did not oppose the petition. (*Ibid*.)

Without further hearing, the workers' compensation judge modified her order and findings. (*Rucker*, *supra*, 82 Cal.App.4th at p. 155.) She found the payment of advances against permanent disability was not in issue because the employee failed to raise the issue; the judge made a factual finding that there was no evidence the employee requested such payments. (*Ibid*.) The employee filed another petition for reconsideration, presenting evidence that she had requested the payments and had raised the issue prior to

22.

trial. (*Id*. at pp. 155–156.) The WCAB denied the petition for reconsideration, and the employee petitioned the appellate court for review. (*Id*. at p. 156.)

The court concluded there was a due process issue in the case, which "was the result of a failure to read the record prior to rendering a decision that resolved an issue raised on the [workers' compensation judge's] own initiative, without affording the parties an opportunity to be heard." (*Rucker*, *supra*, 82 Cal.App.4th at pp. 156–157, italics omitted.) The employer's defense at the trial had been based on its reliance on a prior case decision, not on the employee's failure to request advances against permanent disability. The court pointed to entries in the record that demonstrated the employee raised the issue of payment of permanent disability advances multiple times. (*Id*. at p. 157.) It also pointed out that the employer admitted to not having paid any permanent disability, which included advances against permanent disability. (*Ibid*.) The employer tacitly admitted the employee requested permanent disability advances. (*Ibid*.) "Thus, the trial proceeded on a completely different excuse for nonpayment. A [workers' compensation judge] may not resolve an unaddressed issue without first affording the parties an opportunity to offer rebuttal. [Citations.] The improper restriction on the right to present evidence in rebuttal is a deprivation of the constitutional guaranty of due process of law." (*Ibid*.) The court concluded the WCAB should have granted the second petition for reconsideration, because the amended decision of the workers' compensation judge resulted in a denial of the employee's due process. (*Id*. at p. 158.)

There was no denial of due process in the decision after reconsideration in this case. The Board decided the same issues that were addressed at the trial and decided initially by the ALJ: whether the Division established that Ventura violated the safety regulation (Cal. Code Regs., tit. 8, § 3999, subd. (a)) by failing to ensure that the screw conveyor was guarded by a substantial cover or grating; whether the Division established a rebuttable presumption that the citation was properly classified as serious; whether Ventura rebutted that presumption by demonstrating it did not know, and could not

23.

reasonably have known, of the existence of the violation; and whether the proposed penalty was reasonable. Although the Board made a factual finding concerning Ventura's knowledge of past removal of the grates that the ALJ did not make, and mentioned hearsay evidence the ALJ did not mention, the same issues were presented in the first and second petitions for reconsideration.

Both parties addressed at the hearing whether there was a safety violation and whether Ventura knew or should have known of it; both had an opportunity to present evidence to prove or negate those issues and argued them in post-hearing briefs. Unlike the *Rucker* case, in this case, no new issue was addressed or decided in the Board's decision after reconsideration, without input from the parties. Ventura has not established any due process violation in rendering the decision after reconsideration that would justify a second petition for reconsideration.

### 5. Denial of second petition for reconsideration

Ventura asserts it timely filed its second petition for reconsideration (apparently because it was filed within 30 days after the Board filed its decision after reconsideration). It contends the Board failed to act on it within 45 days after the date of filing, and therefore the second petition was denied by operation of law (see § 6624).[7] Ventura then filed its petition for writ of mandate within 30 days after the denial by operation of law, so Ventura contends the writ petition was timely.

Ventura's argument assumes its second petition for reconsideration was properly filed. As we have already determined, it was not. A party aggrieved by the Board's decision after reconsideration must challenge it, if the party challenges it at all, by filing a petition for writ of mandate in the superior court; the exceptions that allow a second petition for reconsideration involve situations in which the party is newly aggrieved by

---

[7] "A petition for reconsideration is deemed to have been denied by the appeals board unless it is acted upon within 45 days from the date of filing. The appeals board may, upon good cause being shown therefor, extend the time within which it may act upon that petition for not exceeding 15 days." (§ 6624.)

24.

the Board's decision after reconsideration. None of those situations existed in this case. Ventura was aggrieved both by the initial ALJ decision and by the Board's decision after reconsideration. Its challenge to both decisions was that the evidence presented at the ALJ hearing was not sufficient to support the findings and decision. This is one of the grounds for challenging the decision by petition for writ of mandate. (§ 6629.) Consequently, if Ventura wished to challenge the Board's decision after reconsideration, its means to do so was by filing a timely petition for writ of mandate in the trial court. Ventura was not permitted to unilaterally grant itself an extension of time to petition the court for a writ of mandate by filing a second petition for reconsideration that raised the same issues as the first, waiting for the 45-day period for Board action to expire, then filing a petition for writ of mandate within 30 days thereafter.

Ventura's argument that it filed a second petition for reconsideration in order to exhaust its administrative remedies is also without merit. Section 6627 expressly authorizes a party to file a petition for writ of mandate within 30 days after a petition for reconsideration is denied or a decision following reconsideration is filed. At that point, the parties' administrative remedies have been exhausted.

### 6. Conclusion regarding timeliness

We conclude from the foregoing discussion that Ventura's second petition for reconsideration was not properly filed and had no effect on the timeliness of its petition for writ of mandate. The Board's decision after reconsideration was filed on September 22, 2017, and Ventura's time for filing a petition for writ of mandate for review of that decision expired 31 days thereafter, on October 23, 2017 (because October 22 fell on a Sunday). Its petition for writ of mandate was not filed until December 15, 2017. The trial court properly concluded from the face of the pleading and the date of filing that the petition was not timely filed. It did not err in granting the Board's motion for judgment on the pleadings.

### III. Equitable Tolling

#### A. The *Saint Francis* decision

After briefing in this case was complete, Ventura requested leave to file supplemental briefing to discuss the effect of a newly issued Supreme Court opinion (*Saint Francis, supra,* 9 Cal.5th 710) on the issue of the timeliness of its writ petition. We granted the request, and all parties filed supplemental briefs.

In *Saint Francis*, the court considered whether the doctrine of equitable tolling applied to the time period set out in Government Code section 11523, which governs the time for filing a petition for writ of administrative mandate to obtain judicial review of the decision of an administrative agency, when there are no more specific statutory provisions applicable to the agency. (*Saint Francis*, *supra*, 9 Cal.5th at pp. 716–717.) There, the State Department of Public Health (department) had imposed a fine on the hospital for a regulatory violation; the ALJ found in favor of the hospital. (*Id*. at p. 717.) The department reversed the ALJ's decision. (*Ibid*.) The department's decision stated it was effective immediately. Two weeks later, the hospital filed a request for reconsideration, which was ordinarily allowed "within '30 days after the delivery or mailing of a decision to a respondent.' " (*Id*. at p. 718, citing Gov. Code, § 11521, subd. (a).) The department denied the request for reconsideration, however, explaining that, because its decision was effective immediately, reconsideration was not allowed. (*Saint Francis*, at p. 719.) Eleven days after that denial, but 41 days after service of the department's final decision, the hospital petitioned for a writ of administrative mandate in the superior court. The trial court sustained the department's demurrer to the writ petition on the ground it was untimely; under Government Code section 11523, the writ petition was required to be filed " 'within 30 days after the last day on which reconsideration can be ordered.' " (*Saint Francis*, at p. 719, citing Gov. Code, § 11523.) Since reconsideration was not allowed when a decision was effective immediately, the

26.

writ petition was untimely if it was not filed within 30 days after service of the department's decision.  (*Ibid.*)

The court concluded that, in appropriate circumstances, equitable tolling could be applied to the time period set out in Government Code section 11523.  "Equitable tolling is a 'judicially created, nonstatutory doctrine' that ' "suspend[s] or extend[s] a statute of limitations as necessary to ensure fundamental practicality and fairness." '  [Citation.]  The doctrine applies 'occasionally and in special situations' to 'soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.'  [Citation.]  Courts draw authority to toll a filing deadline from their inherent equitable powers—not from what the Legislature has declared in any particular statute.  [Citation.]  For that reason, we presume that statutory deadlines are subject to equitable tolling."  (*Saint Francis*, *supra*, 9 Cal.5th at pp. 719–720.)  The presumption is rebuttable.  "A court may conclude that explicit statutory language or a manifest policy underlying a statute simply cannot be reconciled with permitting equitable tolling, 'even in the absence of an explicit prohibition.' "  (*Id*. at p. 720.)

The court considered the language of Government Code section 11523, the length of the period it allowed for filing the writ petition, any statutory exceptions to the time limit on filing, and the legislative history of the statute.  (*Saint Francis*, *supra*, 9 Cal.5th at pp. 720–724.)  It concluded that equitable tolling of the statute was available, as a narrow remedy that applied only occasionally and in special situations, when justice and fairness demanded the limitations period be tolled.  (*Id*. at pp. 723–724.)

The court identified three elements that must be present in order for equitable tolling to apply:  " '[(1)] timely notice, and [(2)] lack of prejudice, to the defendant, and [(3)] reasonable and good faith conduct on the part of the plaintiff.' "  (*Saint Francis*, *supra*, 9 Cal.5th at p. 724.)  The court concluded the first element was met:  before the hospital's time for filing a writ petition had expired, it both filed a petition for reconsideration and informed the department that it intended to file a writ petition if its

27.

petition for reconsideration was unsuccessful. (*Id*. at p. 727.) The court noted the department's attorney had also agreed with the hospital's understanding of the date the petition for reconsideration was due. (*Id*. at pp. 718, 727.)

The court found the second element was also met. The focus of the prejudice analysis is on "whether application of equitable tolling would prevent the defendant from defending a claim on the merits." (*Saint Francis*, *supra*, 9 Cal.5th at p. 728.) The department had defended its assessment of the penalty throughout the administrative proceedings, so the court could not see how tolling the time period would undermine its ability to defend the propriety of the penalty in court. (*Ibid*.)

The court interpreted the third element to require both objective reasonableness—that the party's actions were fair, proper, and sensible in light of the circumstances—and subjective good faith—denoting honesty of purpose, freedom from intention to defraud, and being faithful to one's duty or obligation. (*Saint Francis*, *supra*, 9 Cal.5th at p. 729.) Because the Court of Appeal had not determined whether that element was met, the court remanded the case for it to make that determination. (*Id*. at p. 730.)

## B.    Leave to amend

The Board's motion for judgment on the pleadings was made on the ground Ventura's petition for writ of mandate was not timely filed. The face of the pleading revealed the petition was not timely filed and the trial court did not err in granting the motion. Ventura now argues that its late filing may be excused on the ground of equitable tolling, under principles set out in *Saint Francis*. Equitable tolling was not pled in the petition, however. Accordingly, we will treat Ventura's contention as an argument that it should be permitted to amend its pleading to allege facts supporting equitable tolling of the limitations period, to avoid the bar of untimely filing.

"A trial court has wide discretion to allow the amendment of pleadings, and generally courts will liberally allow amendments at any stage of the proceeding." (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280.) A " 'motion

28.

for judgment on the pleadings is analogous to a general demurrer.' " (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602.) " 'In the case of either a demurrer or a motion for judgment on the pleadings, leave to amend should be granted if there is any reasonable possibility that the plaintiff can state a good cause of action.' " (*Gami v. Mullikin Medical Center* (1993) 18 Cal.App.4th 870, 876 (*Gami*).) The plaintiff has the burden of showing what amendment can be made, and how it will change the legal effect of the pleading, so that it states a cause of action. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.) A plaintiff can even make this showing for the first time on appeal. (*Ibid.*)

Denial of leave to amend is reviewed for abuse of discretion. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) "Where a demurrer is sustained or a motion for judgment on the pleadings is granted as to the original complaint, denial of leave to amend constitutes an abuse of discretion if the pleading does not show on its face that it is incapable of amendment." (*Gami*, *supra*, 18 Cal.App.4th at p. 877.)

Ventura asserts that the time period in issue in this case is subject to equitable tolling, like the time period addressed in *Saint Francis*. Further, it asserts facts making the doctrine applicable exist in this case. Whether the proposed amendment is viable as a means of curing the defect in the existing pleading depends upon whether equitable tolling may apply to extend the time limit for filing a petition for writ of mandate in the superior court to challenge the administrative decision of the Board. Consequently, we must determine whether the time limitation expressed in section 6627 is the type of limit that is subject to equitable tolling.

C.    **Application of equitable tolling to section 6627**

Ventura contends the limitations period set out in section 6627, which applies to judicial review of decisions of the Board, is a statute of limitations subject to equitable tolling, just as Government Code section 11523 was held to be in *Saint Francis*. The

29.

Board and the Division contend section 6627 is a jurisdictional time limit and, as such, cannot be extended by the court through equitable tolling.

In *Elkins v. Derby* (1974) 12 Cal.3d 410 (*Elkins*), the court addressed a "matter of first impression concerning whether the statute of limitations on a plaintiff's personal injury action is tolled for the period during which he pursues his workmen's compensation remedy against defendant." (*Id.* at p. 412.) The plaintiff had been injured while working at the defendants' business. He filed an application for workers' compensation benefits, but it was denied on the ground he was not an employee at the time of his injury. (*Id.* at p. 413.) The plaintiff filed his civil action against the defendants about a month after receiving the final workers' compensation decision. The trial court sustained the defendants' demurrer on the ground the plaintiff's action was barred by the statute of limitations. (*Ibid.*)

The reviewing court reversed, following "a line of relatively recent California cases which points toward the principle that regardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.' " (*Elkins*, *supra*, 12 Cal.3d at p. 414.) The court concluded suspension of the running of the limitations period would not frustrate achievement of the primary purposes of the limitations statute: "to '[prevent] surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " (*Id.* at p. 417.) The employer would not be prejudiced by failure to gather evidence, if it was notified of the employee's claim by the workers' compensation proceeding. (*Id.* at pp. 417–418.) Further, the employee should not be required to make duplicate filings when in doubt about which remedy applies. (*Id.* at p. 419.)

In *Addison v. State of California* (1978) 21 Cal.3d 313 (*Addison*), the court concluded the filing of a civil action in federal court suspended the running of the six-

30.

month limitations period for filing an action against a public entity in state court. Claims against public entities were required to be presented to the appropriate agency within a specified time, and, if rejected, the claimant had six months to bring a court action. (*Id.* at p. 316.) The plaintiffs filed timely claims, which were rejected. (*Id.* at p. 317.) Three and one-half months later, they filed an action in federal court alleging federal and state claims. The defendants' motion to dismiss for lack of federal jurisdiction was granted; the plaintiffs filed a similar action in state court, even before the dismissal was granted. (*Ibid.*) In state court, the defendants' demurrer on statute of limitations grounds was sustained. (*Ibid.*)

Although "[i]t has been held that 'The prescribed statutes of limitations for commencement of actions against the state "are mandatory and must be strictly complied with," ' " the court concluded, "occasionally and in special situations, the foregoing statutory procedure does not preclude application of the equitable tolling doctrine, the purpose of which is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." (*Addison*, *supra*, 21 Cal.3d at p. 316.) The court followed the rule set out in *Elkins* and held that "application of the doctrine of equitable tolling requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." (*Addison*, at p. 319.) "As with other general equitable principles, application of the equitable tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the … limitations statute." (*Id.* at p. 321.) The defendants had notice of the plaintiffs' claims, and any delay from the erroneous choice of forum was minimal. (*Ibid.*) Denial of tolling would deny the plaintiffs a hearing on the merits of their claim. (*Ibid.*) The court found the balance favored the plaintiffs. It reversed and remanded with directions to overrule the demurrer. (*Ibid.*)

31.

Equitable tolling has not been applied to the time limit for filing a civil appeal.  In *Estate of Hanley* (1943) 23 Cal.2d 120, the court considered the timeliness of an appeal from an order settling the account of an executrix, to which a 60-day time limit applied. (*Id*. at p. 122.)  It stated:  "the requirement as to the time for taking an appeal is mandatory, and the court is without jurisdiction to consider one which has been taken subsequent to the expiration of the statutory period." (*Ibid*.)  "In the absence of statutory authorization, neither the trial nor appellate courts may extend or shorten the time for appeal [citation], even to relieve against mistake, inadvertence, accident, or misfortune [citations].  Nor can jurisdiction be conferred upon the appellate court by the consent or stipulation of the parties, *estoppel*, or waiver.  [Citations.]  If it appears that the appeal was not taken within the 60-day period, the court has no discretion but must dismiss the appeal of its own motion even if no objection is made." (*Id*. at p. 123, italics added.)

The court explained the reason for this rule:

> "In strictly adhering to the statutory time for filing a notice of appeal, the courts are not arbitrarily penalizing procedural missteps.  Relief may be given for excusable delay in complying with many provisions in the statutes and rules on appeal, such as those governing the time within which the record and briefs must be prepared and filed.  These procedural time provisions, however, become effective *after* the appeal is taken.  The first step, taking of the appeal, is not merely a procedural one; it vests jurisdiction in the appellate court and terminates the jurisdiction of the lower court.  And of particular importance is the fact that the security of rights of contract, titles to property, and the status of persons rest upon certainty in the finality of judgments occasioned by the lapse of the statutory time for the taking of an appeal." (*Estate of Hanley*, *supra*, 23 Cal.2d at pp. 123–124.)

In *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, the defendants' notice of appeal of the judgment in a civil action was filed one day late.  The court cited a rule of court authorizing the reviewing court, for good cause, to relieve a party from a default in failing to comply with the rules, " '*except the failure to give timely*

*notice of appeal.*' " (*Id*. at p. 666, citing former Cal. Rules of Court, rule 45(e).)[8] The court then reiterated the reason for the rule, as set out in *Estate of Hanley*, and the jurisdictional nature of a timely notice of appeal. (*Hollister Convalescent Hosp., Inc.*, at p. 666.) Because the notice of appeal was untimely, the appeal was dismissed. (*Id*. at p. 675.)

Thus, an ordinary statute of limitations governing the time for filing a pleading initiating an action is subject to the equitable tolling doctrine. The time for filing appeals in conventional civil actions is not. " 'Compliance with the time for filing a notice of appeal is mandatory and jurisdictional.' " (*Conservatorship of Townsend* (2014) 231 Cal.App.4th 691, 700.) Absent statutory authorization to extend the jurisdictional period, if the notice of appeal is not actually or constructively filed within the appropriate filing period, an appellate court is without jurisdiction to determine the merits of the appeal and must dismiss it. (*Id*. at pp. 700, 701.) " 'The purpose of this requirement is to promote the finality of judgments by forcing the losing party to take an appeal expeditiously or not at all.' " (*Id*. at p. 700.)

Whether the time for filing a writ petition in court to obtain review of an administrative decision is jurisdictional or subject to extension by the court has been less clear. Government Code section 11523 contains general provisions for seeking review of administrative adjudications. It provides: "Judicial review may be had by filing a petition for a writ of mandate in accordance with the provisions of the Code of Civil Procedure, subject, however, to the statutes relating to the particular agency." (Gov. Code, § 11523.) The petition must be filed "within 30 days after the last day on which reconsideration can be ordered." (*Ibid*.) However, "[i]f the petitioner, within 10 days after the last day on which reconsideration can be ordered, requests the agency to prepare

---

[8] See now California Rules of Court, rule 8.104(b): "Except as provided in [California Rules of Court, ]rule 8.66, no court may extend the time to file a notice of appeal. If a notice of appeal is filed late, the reviewing court must dismiss the appeal."

all or any part of the record, the time within which a petition may be filed shall be extended until 30 days after its delivery to him or her." (*Ibid.*)

In *Ginns v. Savage* (1964) 61 Cal.2d 520, the Real Estate Commissioner (commissioner), after notice and a hearing, revoked the plaintiff's license as a real estate broker. (*Id*. at pp. 521–522.) The commissioner issued a decision, which stated it was effective October 2, 1961. The plaintiff filed her petition for writ of mandate to challenge the decision on November 3, 1961, two days late. (*Id*. at p. 522.) The commissioner demurred to the petition on the ground the time limits set out in Government Code section 11523 were jurisdictional and the plaintiff had not complied with them. The court stated: "The law is settled, and clear, that the statutory periods within which mandamus petitions may be filed are *not* jurisdictional in nature, as are the periods within which appeals may be taken from lower courts [citation], but are mere statutes of limitation." (*Ginns*, at p. 524.) The plaintiff had attempted to allege that the delay was induced by the representation of the commissioner's attorney that the deadline for filing her petition was November 3, 1961. (*Id*. at p. 523.) The court reversed the dismissal and directed that the plaintiff be granted leave to amend her petition to allege the misrepresentation. (*Id*. at p. 526.)

In *Pressler v. Donald L. Bren Co*. (1982) 32 Cal.3d 831 (*Pressler*), the Supreme Court suggested the opposite. There, an employee made a claim against his former employer for compensation owed. (*Id*. at p. 833.) After an informal administrative hearing (see § 98, subd. (a)), the Labor Commissioner issued a decision in the employee's favor. (*Pressler*, at p. 833.) The employer filed a notice of appeal in the superior court 13 days later. (*Ibid*.) The employee moved to dismiss the appeal because the notice of appeal was not filed within the 10-day statutory time period (see § 98.2, subd. (a)). (*Pressler*, at p. 834.)

The court noted that, in conventional appeals, timely notice of appeal is an absolute prerequisite to appellate jurisdiction. (*Pressler*, *supra*, 32 Cal.3d at p. 835.)

Although an appeal from a Labor Commissioner decision differs from a conventional appeal because it is heard de novo, the statutory framework "clearly demonstrates the mandatory and jurisdictional nature of the requirement that a party notice his or her appeal within 10 days. The timely filing of the notice of appeal (1) forestalls the finality of the Labor Commissioner's decision; (2) terminates the jurisdiction of the Labor Commissioner; and (3) vests jurisdiction to conduct a trial de novo in the appropriate court." (*Id*. at p. 836.) Public policy favors full and prompt payment of wages due to an employee, and requiring strict adherence to the time requirement for such appeals helps assure achievement of this overriding goal. (*Id*. at p. 837.) The court also noted "that neither mistake, surprise, nor excusable neglect will excuse, for example, the late filing of a petition to review a determination of the [WCAB] [citation] or of the Agricultural Labor Relations Board [citation]. Nor may a court extend the time for filing a petition for writ of mandate to review the decision of an administrative agency whose proceedings are governed by the Administrative Procedure Act based on mistake, inadvertence or other such excuse." (*Ibid*.) The court affirmed the dismissal of the late-filed appeal. (*Id*. at p. 838.)

In *Elliott v. Contractors' State License Bd*. (1990) 224 Cal.App.3d 1048 (*Elliott*), a contractor filed a petition for a writ of mandate to review the administrative decision revoking his contractor's license. (*Id*. at p. 1051.) Under Government Code section 11523, the contractor had 30 days from the effective date of the administrative decision within which to file his writ petition; he filed it two months late. (*Elliott*, at p. 1052.) The court noted: "The time within which a party must institute judicial review of administrative action is generally held to be jurisdictional." (*Ibid*.)

Nonetheless, the court considered and rejected application of the rule that "[a] defendant is estopped to assert the statute of limitations if its conduct caused the plaintiff to delay filing the action." (*Elliott*, *supra*, 224 Cal.App.3d at p. 1053.) The agency had not affirmatively misled the contractor about the filing time. (*Ibid*.) The court also

35.

rejected the argument that late filing of the writ petition was a mere technical noncompliance with the statute of limitations. "Under certain circumstances, technical noncompliance with *nonjurisdictional* filing requirements will not cause a petition to be deemed untimely filed." (*Ibid.*) In those cases, however, the party timely submitted the petition and the clerk rejected it based on nonjurisdictional defects in the form of the petition. The contractor in *Elliott* had not timely submitted his petition. (*Id*. at pp. 1053–1054.)

The general procedures for filing a writ petition to review an administrative decision are "subject … to the statutes relating to the particular agency." (Gov. Code, § 11523.) Various administrative agencies are governed by their own procedures and their own statutory time limits. Appeals from decisions of the WCAB are governed by the time limits in section 5950. In *Camper v. Workers' Comp. Appeals Bd.* (1992) 3 Cal.4th 679 (*Camper*), the Supreme Court observed: "[I]t is now too well established to question that the time limitation set forth in Labor Code section 5950 is jurisdictional." (*Id*. at p. 686; accord, *Malloy v. Workers' Comp. Appeals Bd.* (1991) 1 Cal.App.4th 1658, 1559–1660; *Southwest Airlines v. Workers' Comp. Appeals Bd.* (1991) 234 Cal.App.3d 1421, 1424.) With little or no analysis, other courts have concluded the time for filing petitions for review of other administrative decisions is also jurisdictional. This includes the time for seeking judicial review of decisions of the Agricultural Labor Relations Board under section 1160.8 (*Mario Saikhon, Inc. v. Agricultural Labor Relations Bd.* (1983) 140 Cal.App.3d 581, 582; *United Farm Workers v. Agricultural Labor Relations Board* (1977) 74 Cal.App.3d 347, 350) and decisions of the Public Employment Relations Board pursuant to Government Code section 3542 (*San Mateo Federation of Teachers v. Public Employment Relations Bd.* (1994) 28 Cal.App.4th 150, 155). It also includes the time for seeking review of a penalty imposed for failure to maintain workers' compensation insurance under section 3725 (*Department of Industrial Relations v. Atlantic Baking Co*. (2001) 89 Cal.App.4th 891, 895).

The time for filing a petition for writ of mandate to review decisions of the Board is set out in section 6627. In *Raam Construction, Inc. v. Occupational Safety & Health Appeals Bd.* (2018) 28 Cal.App.5th 709 (*Raam*), the court held that Code of Civil Procedure section 1013 did not extend the time period in Labor Code section 6627. Code of Civil Procedure section 1013 provides that "any right or duty to do any act … within any period … after service of the document, which time period … is prescribed by statute or rule of court, shall be extended five calendar days, upon service by mail" within the state. (Code Civ. Proc., § 1013, subd. (a).) The *Raam* court concluded section 6627, by its unambiguous language, mandated that the application for a writ of mandate be made within 30 days after the petition for reconsideration was denied, or the decision after reconsideration was filed. (*Raam*, at pp. 713–714.) The time period did not run from service of any document, so Code of Civil Procedure section 1013 did not apply. (*Raam*, at pp. 714–715.) *Raam* cited *Camper*, which reached the same conclusion about the language of section 5950. (*Raam*, at pp. 714–715) The *Raam* court opined that section 5950 was "in all significant respects identical to section 6627," and "the language of section 5950 mirrors that of section 6627." (*Raam*, at p. 714.) Unlike *Camper*, however, *Raam* did not go farther and conclude the time period set out in the statute was jurisdictional, as an additional reason for finding Code of Civil Procedure section 1013 did not apply. We have not found, and the parties have not directed us to, any case in which a court held the time period in section 6627 is jurisdictional or not subject to equitable tolling.

In *Saint Francis*, the court did not mention or discuss cases holding that the time for filing an appeal in a civil action, or the time for filing a petition for judicial review of certain administrative decisions, is jurisdictional and not subject to extension by the court. The court defined equitable tolling as "a 'judicially created, nonstatutory doctrine' that ' "suspend[s] or extend[s] a *statute of limitations* as necessary to ensure fundamental practicality and fairness." ' " (*Saint Francis*, *supra*, 9 Cal.5th at p. 719, italics added.)

37.

Throughout its decision the court referred to Government Code section 11523 as a "statute of limitations," and "presume[d] that statutory deadlines are subject to equitable tolling." (*Saint Francis*, at p. 720.) That presumption could be overcome by "explicit statutory language or a manifest policy underlying a statute [that] simply cannot be reconciled with permitting equitable tolling." (*Ibid.*) In determining whether the presumption was rebutted, the *Saint Francis* court considered the statute's language and structure, the length of the time period for filing, whether tolling provisions in the statute were made exclusive, and whether the legislative history of the statute indicated an intent to preclude equitable tolling.

Government Code section 11523, which was construed in *Saint Francis*, does not apply to the Board's decision because its decision is governed by "statutes relating to the particular agency." (Gov. Code, § 11523; see § 6300 et seq.) Section 6615 provides that "[n]o cause of action arising out of any final order or decision made and filed by the appeals board or a hearing officer shall accrue in any court" until the party's petition for reconsideration has been granted or denied, or the Board has reconsidered the decision on its own motion. (§ 6615.) This provision is consistent with the characterization of the time limit in section 6627 as a statute of limitations. The writ proceeding is based on a cause of action that accrues when reconsideration is denied or a decision after reconsideration is filed, and it must be commenced within the limitations period set out in section 6627. The writ proceeding is not treated as an appeal to which a jurisdictional time limit would apply.

We apply the analysis used in *Saint Francis* to determine whether the presumption that the statute of limitations is subject to equitable tolling has been rebutted. First, we consider the language of the statute. There is no explicit statutory language indicating the time limit set out in section 6627 is not subject to equitable tolling. Section 6627 provides that a person affected by a decision of the Board "may, within the time limit specified in this section," apply for a writ of mandate to review the decision. "The

application for writ of mandate must be made within 30 days after a petition for reconsideration is denied, or, if a petition is granted or reconsideration is had on the appeals board's own motion, within 30 days after the filing of the order or decision following reconsideration." (§ 6627.) "Although the statute—like all statutes of limitations—sets forth a deadline by which writ petitions must be filed, its language and structure is no different from that of other statutes of limitations that are subject to equitable tolling." (*Saint Francis*, *supra*, 9 Cal.5th at p. 720.) The statute in *Saint Francis*, which was subject to equitable tolling, provided that a "petition for a writ of mandate 'shall be filed within 30 days after the last day on which reconsideration can be ordered.' " (*Ibid*.) Other statutes subject to equitable tolling have provided that " '[n]o [Department of Fair Employment and Housing] complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice … occurred' " (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 106, citing Gov. Code, former § 12960, subd. (d)); that the " 'right … to seek judicial review from an appeals board decision shall be exercised not later than six months after the date of the decision of the appeals board' " (*Tarkington v. California Unemployment Ins. Appeals Bd.* (2009) 172 Cal.App.4th 1494, 1502, fn. 6, citing Unemp. Ins. Code, § 410); and that any suit against a public entity for which claim presentation was required "must be commenced … [¶] … not later than six months after the date" notice of denial of the claim was given (Gov. Code, § 945.6, subd. (a)(1); see *Addison*, *supra*, 21 Cal.3d at p. 316). Like these provisions, section 6627 imposes a deadline, but contains no language expressly or implicitly precluding application of equitable tolling.

In contrast, the workers' compensation scheme contains such limiting language. Section 5950 provides, similarly to section 6627, that any person affected by the decision of the WCAB "may, within the time limit specified in this section," apply for a writ to review the decision, and the application "must be made within 45 days after a petition for reconsideration is denied, or, … within 45 days after the filing of the order, decision, or

award following reconsideration." (§ 5950.) Section 5810, however, provides: "The orders, findings, decisions, or awards of the appeals board made and entered under this division may be reviewed by the courts specified in Sections 5950 to 5956 within the time and in the manner therein specified *and not otherwise*." (§ 5810, italics added.) CalOSHA does not contain a similar provision, limiting judicial review to writ proceedings filed "within the time … specified and not otherwise."

Next, we consider the length of the limitations period. The 30-day limitations period of section 6627, like the 30-day limitations period in *Saint Francis*, is not " 'so "exceptionally long" ' that it 'indicates the Legislature's effort to provide, within the strict statutory period itself, a reasonable time to' file suit." (*Saint Francis*, *supra*, 9 Cal.5th at p. 720.) Rather, it is "relatively brief, so it carries with it no such inference." (*Ibid*.)

Section 6627 does not contain any provisions tolling, delaying, or extending the limitations period. Consequently, we need not consider whether any such provisions were intended as the exclusive occasions for extending the statutory time period.

Finally, the legislative history of section 6627 does not suggest the Legislature intended to preclude the application of equitable tolling.[9] Section 6627 was enacted as part of CalOSHA in 1973 (Stats. 1973, ch. 993, § 101, p. 1950) and has not been amended since. CalOSHA was intended to conform California law to the requirements of the federal Occupational Safety and Health Act of 1970 (29 U.S.C. § 651 et seq). (Assem. Com. on Labor Relations, Analysis of Assem. Bill No. 150 (1973–1974 Reg. Sess.) as amended Apr. 12, 1973, p. 1.) The legislative history contains little mention of the provisions for judicial review of the Board's decision, and no discussion of the time period for seeking such review. The initial version of the proposed act contained

---

[9]     Simultaneously with the filing of its first supplemental brief, Ventura filed a request for judicial notice of certain documents from the legislative history of the enactment of section 6627. We grant the unopposed request.

proposed section 6612, which provided that decisions "may be reviewed by the Supreme Court and the courts of appeal within the time and in the manner specified in this chapter." (Assem. Bill No. 150 (1973–1974 Reg. Sess.) as introduced Jan. 23, 1973, § 10, ch. 4, p. 27.) The chapter, however, contained no provisions for the time and manner for review of decisions. (*Id*. at pp. 24–27.) A subsequent version of the proposed act contained proposed section 6627, similar to the workers' compensation review statute, providing for review by petitioning the Supreme Court or a court of appeal for a writ of review. (Assem. Amend. to Assem. Bill No. 150 (1973–1974 Reg. Sess.) Apr. 12, 1973, § 38, ch. 7, p. 49.) Proposed section 6627 was later amended to its final version, which provided for review by petitioning the superior court for a writ of mandate. (Sen. Amend. to Assem. Bill No. 150 (1973–1974 Reg. Sess.) Aug. 28, 1973, § 101, ch. 7, p. 55.) Once it was added, the 30-day time provision for applying for a writ seeking review of the Board's decision remained unchanged throughout. Nothing in the legislative history indicates the Legislature intended the 30-day period to be an absolute limit, not subject to equitable tolling.

We conclude the time period set forth in section 6627 for filing a petition for writ of mandate to review the Board's decision after reconsideration is a statute of limitations, subject to the doctrine of equitable tolling.

### D.    Application of equitable tolling in this case

The parties invite us to determine that equitable tolling either does or does not excuse Ventura's late filing of its petition for writ of mandate in the trial court. The issue before us, however, is whether judgment on the pleadings was properly granted and the writ petition was properly dismissed because the petition showed on its face that it was barred by the statute of limitations. The face of the petition shows the Board issued its decision after reconsideration on September 22, 2017, and Ventura's petition seeking judicial review of that decision was not filed until December 15, 2017, well over 30 days thereafter.

41.

The petition did not allege any facts raising the issue of equitable tolling, and the parties did not present evidence or argument in the trial court to establish or negate its application in this case. The requirements for its application present questions of fact that have not yet been addressed by the trial court. This includes questions regarding whether the conduct of Ventura, the reason for its delay in filing the petition, and the length of the delay were reasonable and in good faith. Additionally, if tolling is appropriate, the trial court must determine the length of the tolling period and whether the petition was timely filed, in light of any tolling period that is allowed. The trial court must also address the issues of notice and prejudice to the Board.

Accordingly, we do not determine on the merits whether equitable tolling is appropriate in this case, or whether the writ petition was timely filed if tolling is allowed. We conclude that, while the trial court properly granted judgment on the pleadings, the Board's motion for judgment on the pleadings addressed Ventura's original petition, and "denial of leave to amend constitutes an abuse of discretion if the pleading does not show on its face that it is incapable of amendment." (*Gami*, *supra*, 18 Cal.App.4th at p. 877.) Ventura has demonstrated that it may be able to amend to allege equitable tolling of the statute of limitations, and we cannot conclude its pleading incapable of amendment to cure the defect. Accordingly, we reverse the judgment and remand to the trial court to permit Ventura to amend its petition to allege facts supporting its claim of equitable tolling.

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate its order granting dismissal of Ventura's petition for writ of mandate, and to enter a new order granting the Board's motion for judgment on the pleadings with leave to amend to allege facts supporting the claim of equitable tolling.  Ventura is entitled to its costs on appeal.

HILL, P.J.

WE CONCUR:


PEÑA, J.


MEEHAN, J.

43.